practice, here followed by the defendant, should not be approved. The only authority I have been able to find closely upon the point is Ward v. Littlejohn, 17 Civ. Proc. R. 178, 6 N. Y. Supp. 170, decided at the General Term of the Second Department, in which it was stated that the defendant could take his choice and either return the bill furnished or demand a further bill; the court saying (page 180, 17 Civ. Proc. R., page 170, 6 N. Y. Supp.): "Neither was it necessary to make a new and specific demand for further particulars. It was enough to return the bill already furnished, if it was defective, and demand that the previous order should be complied with, and a proper bill furnished, or to demand a further bill." The motion is therefore denied, with $10 costs.

Motion denied, with $10 costs.

---

(44 Misc. Rep. 478.)

### HOOK v. MICHIGAN MUT. LIFE INS. CO.

(Supreme Court, Trial Term, Albany County. July, 1904.)

1. LIFE INSURANCE—APPLICATION—FALSE ANSWERS.
    Where the answers in applications for life insurance are made warranties, a false answer to a question avoids the policy.

2. SAME.
    An answer in the application for a life insurance policy by a medical examiner of the company, though false, binds the insured when he knew of such false answer.

Action by John Hook against the Michigan Mutual Life Insurance Company. Motion for nonsuit granted.

Thomas F. Galvan (John H. Gleason, of counsel), for plaintiff.
Henry W. Smith (P. C. Dugan, Jarvis P. O'Brien, and W. W. Morrill, of counsel), for defendant.

COCHRANE, J. This action is brought on a policy of life insurance issued by the defendant on the 30th day of September, 1902, for the sum of $1,000, on the life of William Hook, payable to his brother, the plaintiff herein. William Hook died April 17, 1903.

The policy contains the following provision:

"This policy is issued in consideration of the application therefor, a copy of which is hereto attached and is made a part of this contract."

The application was signed by the insured September 23, 1902, and, after certain questions therein propounded and the answers thereto, contains the following statement:

"I hereby declare that the above are true answers to the foregoing questions, as well as those made or to be made to the company's medical examiner, and I hereby agree that these statements, whether written by my own hand or not, with this declaration, shall form the basis of the contract for insurance, and that any untrue or fraudulent answers, any suppression of facts in regard to my health, habits, or circumstances, or neglect to pay the premium on or before the day it becomes due, shall violate the policy, and forfeit all payments made thereon."

The medical examination was made September 26, 1902, the questions and answers being signed by the insured, together with a state-

ment that "the answers form an essential part of the contract." The contract also provided that no agent had power to change the terms thereof.

The application of the insured and the answers and statements made to the medical examiner are as much a part of the contract as the policy. Together they constitute the contract between the parties, and under the authorities the answers made by the insured, both in his application and to the medical examiner, constitute a part of the contract, and are warranties, and must be substantially true, or the policy will be void. Foot v. Ætna Life Insurance Co., 61 N. Y. 571; Schane v. Metropolitan Life Insurance Co., 76 App. Div. 271, 78 N. Y. Supp. 582; Clemans v. Supreme Assembly Royal Society of Good Fellows, 131 N. Y. 485, 30 N. E. 496, 16 L. R. A. 33; Cushman v. United States Life Insurance Co., 63 N. Y. 404; Ripley v. Ætna Insurance Co., 30 N. Y. 136, 86 Am. Dec. 362; Barteau v. Phœnix Mutual Life Insurance Co., 67 N. Y. 595.

In the medical examination the following question and answer appear:

"Has any application for insurance upon your life ever been made to any company or association upon which a policy has not been granted? If so, state name of company or association. No."

The importance of this question is unchallenged, and the untruthfulness of the answer is admitted. An application to one company had been rejected several years prior to the time this question was answered, and an application to another company was then pending, and was rejected a few days thereafter. The defendant clearly had a right to know about both applications, and, in the absence of any explanatory evidence on the part of the plaintiff, this untrue answer vitiates the policy.

Immediately before the signature of the insured to the medical examination appears the following certificate:

"I hereby certify that my answers to the above questions are true, and are correctly recorded by the medical examiner."

In Grattan v. Metropolitan Life Insurance Co., 92 N. Y. 274, 44 Am. Rep. 372, it was said by the court in reference to a precisely similar state of facts, and concerning a certificate similar to the one above set forth:

"The controversy is thus narrowed to the single question, who was responsible for the falsehood? Was the insured chargeable with it, or was it the sole fault of the company through its medical examiner? On the face of the papers it was the insured. His application, signed by him, and with knowledge of the contents of which he is prima facie chargeable, declares and warrants that his answers to the questions therein contained, 'and to those in the examiner's report herewith, are fair and true.' The examiner's report contains the falsehood, and appended to that is the certificate of the insured, signed by him. * * * Stopping at this point, the case is clear. It is one in which the truth is told to the medical examiner; where the latter, instead of the truth, writes down a falsehood; where the applicant reads and knows the answer that is written, and, with full knowledge of its falsity as written, certifies that it is true and 'agrees exactly' with the answers in fact made. This is the applicant's written admission. It is conclusive upon him, unless by some sufficient proof he explains and rebuts it. * * * The insured must show a state of facts indicating honesty and

truthfulness on his part, and leaving the burden of having declared an untruth solely upon the agent of the company."

The explanatory proof in that case was furnished by a letter which passed between the parties which "tended to explain and rebut the inferences flowing from the certificate of the assured," thereby making a proper question for the jury on that point.

The explanatory proof in this case to overcome and rebut "the applicant's written admission" is claimed by the plaintiff to exist in his own testimony. He testified that he was present at the time of the medical examination, and that his brother stated to the medical examiner correctly and accurately the facts in reference to the previous applications; that the examiner recorded the answer to the question, and did not read the same to the insured, and that the latter signed the medical examination without reading the same. On this state of facts it is claimed that the examiner, and not the insured, was responsible for the untrue answer, and the plaintiff relies on the following cases to establish his right to recover notwithstanding such untrue answer: Sternaman v. Metropolitan Life Insurance Co., 170 N. Y. 13, 62 N. E. 763, 57 L. R. A. 318, 88 Am. St. Rep. 625; Jacobs v. Northwestern Life Assurance Co., 30 App. Div. 285, 51 N. Y. Supp. 967, affirmed 164 N. Y. 582, 58 N. E. 1088; Peters v. United States Industrial Insurance Co., 10 App. Div. 533, 42 N. Y. Supp. 348, affirmed 154 N. Y. 758, 49 N. E. 1103; O'Brien v. Home Benefit Society, 117 N. Y. 310, 22 N. E. 954. If the facts above referred to were the only ones bearing on this point, those authorities would be controlling, but I think they have no application to such a situation as is here presented. The principle underlying those cases, and which constitutes the basis of the decisions therein, is that the insurer is estopped from taking advantage of the errors of its agents in making examinations, taking down answers, and reporting them to the company. Sternaman v. Metropolitan Life Insurance Co., 170 N. Y. 13, 25, 62 N. E. 763, 57 L. R. A. 318, 88 Am. St. Rep. 625; Miller v. Phœnix Mutual Life Insurance Co., 107 N. Y. 292, 296, 14 N. E. 271. In the latter case it was said:

"Neither is it generally a defense to an action founded upon such agreement that the party did not read the contract, or was ignorant of its contents, or that it was prepared by the party claiming the benefit of it, unless he also shows that his signature thereto was obtained by misrepresentation or fraud. In the case, however, of life insurance policies it is the settled doctrine of the modern cases that where the application for insurance is drawn up by the agent of the insurer, and the answers to the interrogations contained therein are inserted by him at his own suggestion, without fraud or collusion on the part of the assured, the insurer is estopped from controverting the truth of such statements, or the interpretation which it has given to the answers actually made by the applicant, in an action upon the instrument between the parties thereto. Plumb v. Cattaraugus Ins. Co., 18 N. Y. 392 [72 Am. Dec. 526]; Rowley v. Empire Ins. Co., 36 N. Y. 550; Baker v. Home Life Ins. Co., 64 N. Y. 648."

Ordinarily, as indicated in the Miller Case last cited, it is incumbent on a party to a contract to acquaint himself with its contents, and he cannot escape the consequences thereof by failing to read the same, in the absence of fraud or other circumstances such as do not exist in this case. It is only by the application of the principle of estoppel as applied to actions on insurance policies, and as distinguishing such contracts

from other contracts, that the plaintiff seeks to avoid the effect of the untruthful answer which the parties have incorporated into the contract between them.   But to constitute an act of estoppel, it must be such as to mislead another acting in good faith and with reasonable care and diligence (Blair v. Wait, 69 N. Y. 113), and the party setting up the estoppel must be free from laches (Trenton Banking Co. v. Duncan, 86 N. Y. 221, 230).

Tested by these principles, I do not think the defendant is estopped from setting up the breach of warranty in question.   This case is easily distinguishable from those relied on by the plaintiff and above cited. In none of those cases does it appear that copies of the application and medical examination were delivered with the policy, as in this case.   According to the testimony of the plaintiff, the answer under consideration was written down by the examiner without comment or explanation; nothing was said to mislead the insured or the plaintiff, or to throw them off their guard.   Copies of all questions and answers were attached to the policy when it was delivered by the company's agent.   It was received by the plaintiff, who was the beneficiary named therein, and the initial premium was paid by him.   He procured the application to be made, and sent the defendant's agent to the insured for that purpose. The policy and copies of the application and of all questions and answers have ever since the delivery thereof remained in possession of the plaintiff.   Whether in his possession or that of the insured, is immaterial as far as this question is concerned.   He, as well as the insured, knew the facts concerning the prior applications for insurance, because he testifies that he was present and heard his brother state those facts to the medical examiner at the time when it is claimed that the latter recorded the false answer.   Before accepting and paying for the policy, it was incumbent upon the insured or the plaintiff to examine the same. It was for this purpose that copies of the application and questions and answers were attached to the policy and delivered therewith.   Good faith toward the defendant, as well as reasonable care on the part of the plaintiff, required an examination of the contract, and a failure to make such examination constituted laches on the part of the plaintiff which precludes him from asserting an estoppel against the defendant.

In New York Life Insurance Co. v. Fletcher, 117 U. S. 519, 6 Sup. Ct. 837, 29 L. Ed. 934, it was said:

"There is another view of this case equally fatal to a recovery.  Assuming that the answers of the assured were falsified, as alleged, the fact would be at once disclosed by the copy of the application, annexed to the policy, to which his attention was called.  He would have discovered by inspection that a fraud had been perpetrated not only upon himself, but upon the company, and it would have been his duty to make the fact known to the company. He could not hold the policy without approving the action of the agents and thus becoming a participant in the fraud committed.  The retention of the policy was an approval of the application and of its statements."

The opinion in that case, as above set forth, is directly in point here, and is not in conflict with any of the cases relied on by plaintiff.

It further appears that the same question was asked in the application made three days before the medical examination, and that the same answer was given.   The plaintiff called the company's agent as a witness, and it appears from his testimony that the insured gave to him cor-

rect information as to one of the prior applications, but gave him no information whatever concerning the other. The answer in the application was falsely recorded by the agent, who testifies that thereafter he handed the application to the insured for his signature, and that he does not know whether or not the insured read it. The presumption is that he did read it. The case, therefore, shows, as a matter of law, an incomplete, and hence an incorrect, answer on the part of the insured to the agent of the defendant who recorded the answers contained in the application, and also knowledge on the part of the insured that such answer as given by him to the agent was improperly recorded by the latter in the application. Plaintiff contends that this circumstance is immaterial in view of the fact that correct information was subsequently given to the medical examiner. We have seen, however, that it is incumbent on the plaintiff to show a state of facts indicating honesty and truthfulness on the part of the insured, and also to show reasonable care and diligence and good faith toward the defendant. And the fact that the insured knew that in his application the answer to the question under consideration was false has a bearing on this branch of the case unfavorable to the plaintiff.

Motion for nonsuit granted.