SARAH A. BOLLARD, Respondent, *v.* NEW YORK LIFE
INSURANCE COMPANY, Appellant.

(Supreme Court, Appellate Term, First Department, January, 1917.)

Insurance (life)— policy of — what constitutes entire contract between
the parties — admissibility of evidence — pleading — when judg-
ment reversed.

> A policy of life insurance declared that it and the applica-
> tion therefor, signed by the insured and attached to the policy,
> as required by statute, should constitute the entire contract
> between the parties, and copies of the application, including
> the medical examination of the insured, were delivered with
> the policy by the insurer's agent or examiner who said nothing
> to mislead the applicant or to prevent her from examining the
> application when the policy was delivered.
>
> In an action brought by the beneficiary of the policy the
> answer pleaded as a defense that the insured made false and
> fraudulent answers to material questions contained in her
> application. *Held,* that testimony, denied by defendant, but
> tending to show that though the insured correctly answered
> said questions the defendant's medical examiner entered
> wrong answers on the blank and that the insured signed the
> application without reading it, was admissible, but was no
> answer to the defense of fraud pleaded, and a judgment
> entered on the verdict in favor of plaintiff will be reversed
> and the complaint dismissed upon the merits.

APPEAL by the defendant from a judgment of the
Municipal Court of the city of New York, borough of
Manhattan, first district, entered on the verdict of a
jury in favor of plaintiff, and from an order denying
the motion to set aside the verdict and for a new trial.

James H. McIntosh (Louis H. Cook, of counsel),
for appellant.

Goldstein & Goldstein (Jonah J. Goldstein, of
counsel), for respondent.

Lehman, J.  The plaintiff has recovered judgment in an action brought by her as beneficiary of an insurance policy issued upon the life of her daughter. The answer sets up that the insured in her application for insurance made false and fraudulent answers in writing to questions contained in the application and signed these answers and that the applicant " therein and thereby declared on behalf of herself and of every person who should have or claim any interest in any insurance made thereunder that she had carefully read each and all of said answers, they were each written as made by her, that each of them was full, complete and true, and that to the best of her knowledge and belief she was a proper subject for life insurance; said applicant further declared therein that each and all of her said answers were made by her to obtain said insurance and that she understood and agreed that they were each material to the risk and that the defendant believing them to be true would rely and act upon them." The answer further sets forth that as soon as the defendant had notice of the falsity of the statements and representations it elected to rescind the contract of insurance.

At the trial it appeared that the insured had signed an application on which the questions were printed and on which a number of the written answers to the questions were false. Moreover, there is no doubt that each of the questions and answers related to a material fact and that if the insured made these answers she must have known that they were false. The plaintiff however produced testimony to show that the beneficiary had answered the questions correctly but the medical examiner had entered the wrong answers on the blank and the beneficiary signed the application without reading it over. This testimony was denied but apparently the jury believed the plaintiff's

testimony. The main question presented by this appeal is whether such testimony was admissible and if true could constitute an answer to the defense of fraud.

Section 58 of the Insurance Law provides: "All statements purporting to be made by the insured shall in the absence of fraud be deemed representations and not warranties." The defendant is therefore bound by its contract unless it proves that the applicant made the statements contained in the written answers fraudulently. Ordinarily, of course, where a party seeks to rescind a contract on the ground of fraud, the other party may introduce evidence to show that there was no fraud and also evidence to show that the party which claims to have been defrauded was in fact not misled. This rule has, however, no application to the present case. The contract itself provides that "the policy and the application therefor constitute the entire contract between the parties," and a copy of the written application was attached to the policy when delivered. Moreover section 58 of the Insurance Law provides that "Every policy of insurance issued or delivered within the state on or after the first day of January, nineteen hundred and seven, by any life insurance corporation doing business within the state shall contain the entire contract between the parties and nothing shall be incorporated therein by reference to any constitution, by-laws, rules, application or other writings unless the same are indorsed upon or attached to the policy when issued; and all statements purporting to be made by the insured shall in absence of fraud be deemed representations and not warranties. Any waiver of the provisions of this section shall be void."

By virtue of the express provisions both of the contract of insurance and of the statute, the application

signed by the insured has therefore become a part of
the contract. The applicant has under her own signa-
ture agreed that "I have carefully read each and
all of the above answers, that they are each written
as made by me, that each of them is full, complete and
true, and that to the best of my knowledge and belief
I am a proper subject for life insurance, and I under-
stand and agree that they are each material to the
risk and that the Company believing them to be true
will rely and act upon them." The plaintiff now is
apparently on the horns of a dilemma. If the answers
as signed by the applicant were actually made, then
the proof shows as a matter of law that they were made
fraudulently and that the defendant relied on them.
If they were not so made the plaintiff must contradict
the terms of the contract signed by the applicant and
the very contract upon which the plaintiff is now claim-
ing and upon which she has recovered judgment.
There is however, a line of cases culminating in the
case of *Sternaman* v. *Metropolitan Life Insurance Co.,*
170 N. Y. 13, in which the courts while recognizing the
apparent dilemma have yet allowed the beneficiary of
a policy to prove that answers to questions which were
incorporated in the policy and made warranties by the
terms of the *policy,* were not given as written down,
on the theory that the examiner is an agent of the
company, that his knowledge of the true facts must
be imputed to his principal and that the principal is
therefore estopped from urging the defense of fraud
or breach of warranty. In the *Sternaman Case, supra,*
the court adopted the language of the Supreme Court
of the United States in the case of *Insurance Co.* v.
*Wilkinson,* 13 Wall. 222: "This principle does not
admit oral testimony to vary or contradict that which
is in writing, but it goes upon the idea that the writing
offered in evidence was not the instrument of the party

19

whose name is signed to it; that it was procured under
such circumstances by the other side as estops that
side from using it or relying on its contents; not that
it may be contradicted by oral testimony, but that
it may be shown by such testimony that it cannot be
lawfully used against the party whose name is signed
to it." The Court of Appeals held that this principle
was applicable to a case where the applicant had signed
an application which concluded with the words. " It
is hereby declared, agreed and warranted by the
undersigned that the answers and statements con-
tained in the foregoing application, and those made to
the medical examiner, as recorded in parts A and B
of this sheet, together with this declaration, shall be
the basis and become part of this contract of insurance
with the Metropolitan Life Insurance Company; that
they are full and true and are correctly recorded, and
no information not contained in this applica-
tion and in the statements made to the medical
examiner, received or acquired at any time by any
person, shall be binding upon the company or shall
modify or alter the declaration and warranties made
therein; that the persons who wrote in the answers
and statements were and are our agents for the pur-
pose and not the agents of the company; and that the
company is not to be taken to be responsible for its
preparation or for anything contained therein or
omitted therefrom; that any false, incorrect or untrue
answer, any suppression or concealment of facts in
any of the answers, any violation of the covenants,
conditions or restrictions of the policy, any neglect to
pay the premium on or before the day it becomes due
shall render the policy null and void and forfeit all
payments made thereunder."

That case arose, however, before section 58 of the
Insurance Law was enacted, which provides that noth-

ing shall be incorporated in the policy by reference to application or other writings unless the same are indorsed upon or attached to the policy when issued. In the present case the application was required by the statute to be attached to the policy, while in the *Sternaman* case there is no evidence that the insured or the beneficiary ever received the application or saw it after it was signed. It seems to me that both on principle and authority these facts differentiate this case from the earlier cases.

In the case of *Archer* v. *Equitable Life Assurance Society,* 218 N. Y. 18, at page 23, the court said in reference to this amendment: "A third condition existed, intimately related to those two, indeed quite the parallel of the first, namely, the warranties and representations made by persons insured, in the process of issuing the policy, might be and frequently were, as we may judicially know, retained continuously and exclusively by the insurers. That insured persons neither had nor received duplicates or copies. They had not incentive or opportunity, from having their statements before them, through incorporation in the policy, to examine and correct any errors in them arising through mistake, carelessness, ignorance or fraud, or to terminate the policy. Frequently they or their beneficiaries became first conscious of the errors, after payment of the premiums or dues through a period of years, when they were alleged by the insurers, in avoidance of the obligations to pay the sum insured. We have concluded that the legislature intended to remove and has removed by the section this condition."

It was, I think, the existence of this condition, now removed by the legislature, that caused the courts to announce the doctrine that an insurance company, whose agents were told and knew the real facts concerning an application but negligently or fraudulently

inserted incorrect answers therein, was estopped from asserting the defense that the contract as signed was unenforceable because of the falseness of the representations or warranties contained therein.

It must be remembered that the court found an estoppel in the *Sternaman* and other cases dealing with insurance policies where similar facts would not give rise to an estoppel if the case had concerned an ordinary contract. There is an allusion to this distinction in the case of *Miller* v. *Phœnix Mutual Life Insurance Co.,* 107 N. Y. 292, at page 296, where the court said: " It is undoubtedly the general rule that a written contract signed by a party thereto and containing the terms and conditions of an agreement, is conclusive upon him, and that he will not be permitted to show, in avoidance thereof, that other stipulations were made at the time of, or before, its execution, which would vary, alter, or contradict the provisions of the written instrument. Neither is it generally a defense to an action founded upon such agreement, that the party did not read the contract, or was ignorant of its contents, or that it was prepared by the party claiming the benefit of it, unless he also shows that his signature thereto was obtained by misrepresentation or fraud. In the case, however, of life insurance policies it is the settled doctrine of the modern cases, that where the application for insurance is drawn up by the agent of the insurer, and the answers to the interrogations contained therein, are inserted by him at his own suggestion, without fraud or collusion on the part of the assured, the insurer is estopped from controverting the truth of such statements, or the interpretation which it has given to the answers actually made by the applicant, in an action upon the instrument between the parties thereto. (*Plumb* v. *Cattaraugus Ins. Co.,*

18 N. Y. 392; *Rowley* v. *Empire Ins. Co.,* 36 id. 550; *Baker* v. *Home Life Ins. Co.,* 64 id. 648.)''

In the case of *Hook* v. *Michigan Mutual Life Insurance Co.,* 44 Misc. Rep. 478, the plaintiff sued upon a policy where the application contained false answers and where copies of the application and medical examination were delivered with the policy. The court at Special Term in a careful opinion reviewed all decisions in which an estoppel has been found and distinguished those cases on the ground that: '' In none of those cases does it appear that copies of the application and medical examination were delivered with the policy as in this case.'' The same distinction exists of course in this case. Just as in the *Hook* case, copies of the application including the medical examination were apparently delivered with the policy and nothing was said by the agent or examiner to mislead the applicant or to prevent her from examining the application when the policy was delivered to her. In that case the court said: '' Before accepting and paying for the policy it was incumbent upon the insured or the plaintiff to examine the same. It was for this purpose that copies of the application and questions and answers were attached to the policy and delivered therewith. Good faith toward the defendant as well as reasonable care on the part of the plaintiff required an examination of the contract, and a failure to make such examination constituted laches on the part of the plaintiff which precludes him from asserting an estoppel against the defendant.'' That case was affirmed by the Appellate Division, third department, without opinion (139 App. Div. 922), and seems to correctly represent the law. The Supreme Court of the United States in the case of *New York Life Insurance Co.* v. *Fletcher,* 117 U. S. 519, has arrived at the same conclusion and has distinguished the case of *Insurance Co.* v. *Wilkinson,*

Supreme Court, Appellate Term, January, 1917. [Vol. 98.

13 Wall. 222. See, also, *Carmichael* v. *John Hancock Life Ins. Co.*, 116 App. Div. 291, to the same effect.

In the present case we not only have the fact that copies of the application with the medical examination were delivered to the insured and remained in her possession but we also have the fact that the legislature has expressly provided that this must be done for the protection of the insured and that when this is done the policy and the papers so delivered are the whole contract. It was the evident purpose of the legislature that each party to the contract was to receive complete copies of the contract so that there might be no dispute as to what the contract contained or what it was intended to contain. It would certainly seem anomalous if under such circumstances a defendant who has complied with the statute were estopped from using the contract or relying on its contents, merely because the other side had not examined or read the contract and relied upon the expectation that its contents would conform to oral statements. See, also, *Russell* v. *Prudential Ins. Co.*, 176 N. Y. 178, and *McClelland* v. *Mutual Life Ins. Co.*, 217 id. 336.

Judgment should therefore be reversed, with thirty dollars costs, and complaint dismissed upon the merits, with costs.

WHITAKER and FINCH, JJ., concur.

Judgment reversed, with costs.