JULIUS STANULEVICH, Respondent, *v.* ST. LAWRENCE LIFE ASSOCIATION, Appellant.

Second Department, May 3, 1918.

**Insurance — life insurance — rescission of policy — effect of false statement made in application by insurer's agent.**

Where an applicant for a life insurance policy, who was an uneducated foreigner and could not read English, made truthful answers to all questions propounded by the insurer's agent, who inserted a false statement that the applicant had had no medical or surgical treatment during the last five years, such false representation will not avoid the policy, and the defendant has no right to rescind as it cannot be held to have issued the policy in reliance upon the representation.

APPEAL by the defendant, St. Lawrence Life Association, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Dutchess on the 5th day of July, 1917, upon the verdict of a jury, and also from an order entered in said clerk's office on the 19th day of June, 1917, denying defendant's motion for a new trial made upon the minutes.

*Samuel Crook*, for the appellant.

*James G. Meyer* [*John T. Kelly* with him on the brief], for the respondent.

BLACKMAR, J.:

The action was brought to recover sick benefits under a policy of insurance issued by the defendant, called the ideal accident and health policy, which insured against loss of life, limb, sight or time by accident or sickness. The answer interposed sets up eight separate defenses of new matter; but the real contest is on an alleged false representation by the plaintiff in his application for the policy.

A form for an application is printed on the policy and is in the shape of a statement to be signed by the assured. Among other matters, the printed application form reads: " I have not had any medical or surgical treatment during the past five years, except as herein stated." Then follows a blank left for specification of the exceptions. In the blank signed by the plaintiff no exceptions were specified, so leaving the application to read that he had had no medical or surgical treatment during the last five years, unqualified. As a matter of fact, the assured had undergone a serious surgical operation within a year preceding the issuance of the policy.

In the case of *Sternaman* v. *Metropolitan Life Ins. Co.* (170 N. Y. 13), followed by *Butler* v. *Michigan Mut. Life Ins. Co.* (184 id. 337), it is held that when an applicant for insurance makes truthful answers to all questions propounded by the medical examiner, who records them erroneously or falsely, such falsity will not avoid the policy.

One Knox, an agent of the defendant, as instructed by the defendant, filled out the application form from information furnished by the plaintiff. He knew when he filled out the

form that plaintiff had submitted to a surgical operation within a year; he, however specified no exceptions to the general statement that plaintiff had had no surgical operations, but made a check mark in the blank left for such exceptions, as he was instructed to do by the officers of the company when the exceptions were to be negatived. The application so written was presented to the plaintiff, an uneducated Pole, signed by him, and, upon it, the policy was written.

I think that Knox occupied the same relation to the company and the assured that the medical examiner did in the *Sternaman* case, and that the doctrine of the *Sternaman* case must govern unless some new development in the law since that case was decided prevents.

It is claimed that there has been such a change in the law by virtue of the enactment of chapter 326 of the Laws of 1906 (adding to Insurance Law [Gen. Laws, chap. 38; Laws of 1892, chap. 690], § 58; now Insurance Law [Consol. Laws, chap. 28; Laws of 1909, chap. 33], § 58). In the place of quoting the words of the statute, I give the analysis and interpretation of it by the Court of Appeals in *Archer* v. *Equitable Life Assurance Society* (218 N. Y. 18) as follows: (a) The policy, that is, the document, shall contain the entire contract; (b) nothing shall be incorporated in the contract by reference to another writing or document not indorsed upon or attached to the policy when issued; (c) all statements made by the assured, as warranties or representations, are those which appear on the face of the policy; (d) all statements which in form are warranties shall, in the absence of fraud, be deemed representations and not warranties; (e) any waiver of the provisions of the section shall be void.

I see nothing in these provisions which overrules the law of the *Sternaman* case. The very purpose of the law seems to me to prevent a company avoiding its policies, unless either they are obtained by fraud in representations, in which case the representations fall under the law of warranty, or they are obtained by false representations which deceived the company into issuing a policy; in which case the law of rescission obtains. In the case at bar the jury have found on sufficient

Second Department, May, 1918. [Vol. 183.

evidence that the representation was not fraudulent; therefore, the only question is whether the defendant has the right to rescind. It may be conceded that the representation was both false and material. But the company was not deceived, for its agent knew the actual facts, and so filled out the form of application as to conceal them. Now, it was Knox's duty to fill out the application form, and he had been instructed how to do it. The president of the company, called as a witness in behalf of the defendant, testified that " At various times while he acted as agent for us he was definitely instructed how to fill an application." Again: " The verbal instructions were that the majority of those numbers in the application were statements and not answers, and, if true, as supplied by the applicant, no answer is necessary, but simply a check mark, showing that they have been noticed and passed upon." Knox filled out the form as it was his duty to do, made the check mark, although according to his own testimony he knew that thereby he made the application blank false on its face. The application so filled out was submitted by Knox to the plaintiff, a Pole who could not read English, and he signed it. It is true that the law is calculated to guard against an applicant unwittingly making a false representation, by providing that his application and the whole of it shall be indorsed on the policy, so that he may read it and know its contents; but that is no protection in the case of one who cannot read English. We think the case falls within the doctrine of the *Sternaman* case and, in addition thereto, as the case involves the law of rescission and not warranty as did the *Sternaman* case, the defendant, which through its agent knew the actual facts, cannot be held to have issued the policy relying on the representation, and, therefore, cannot rescind.

We reach this conclusion after a careful consideration of *Bollard* v. *New York Life Insurance Co.* (98 Misc. Rep. 286; affd., 182 App. Div. 915).

The judgment and order should be affirmed, with costs.

Present — JENKS, P. J., MILLS, RICH, BLACKMAR and KELLY, JJ.

Judgment and order unanimously affirmed, with costs.