CECELIA KWIATKOWSKI and Another, Respondents, *v.* THE BROTHERHOOD OF AMERICAN YEOMEN, Appellant.

Fourth Department, May 5, 1926.

**Insurance — fraternal benefit insurance — action on certificate — defense that application contained false statement as to number of children of insured — false statement was placed in application by defendant's agent without knowledge of insured — copy of application was physically annexed to certificate and made part thereof — insured was Polish woman unable to read English — insured is conclusively presumed by Insurance Law, § 232, to have known that application was part of contract — question of fact under circumstances whether retention of certificate was affirmation of untrue statement — Insurance Law, § 58, not applicable to contract in suit.**

In an action on a membership certificate in a fraternal benefit society which is defended on the ground of a breach of warranty based on a false representation of the number of children the insured had had, it must be conclusively presumed

in view of section 232 of the Insurance Law that the insured knew that the application was a part of the contract.

However, since it is contended by the plaintiff that the false statement as to the number of children was placed in the application by defendant's agent, without the knowledge of the insured, and since it appears that the insured was a Polish woman who was unable to read the English language, the question whether or not the retention of the certificate by the insured with a copy of the application physically annexed thereto amounted to an affirmation of the false statements contained in the certificate, was one of fact for the jury.

*It seems,* that section 58 of the Insurance Law, as it existed at the time this controversy arose, was not applicable to the kind of insurance involved herein.

SEARS and TAYLOR, JJ., dissent, with opinion.

APPEAL by the defendant, The Brotherhood of American Yeomen, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of Erie on the 22d day of September, 1925, upon the verdict of a jury rendered by direction of the court.

*John H. Clogston,* for the appellant.

*Percy S. Lansdowne* [*Robert J. Lansdowne* of counsel], for the respondents.

CROUCH, J. The action is on a membership certificate in a fraternal benefit society. The defense is a breach of warranty. In the written application, signed by the insured, in reply to a question as to how many children she had had, the answer " three " appears. The insured in fact had had seven children.

On the trial evidence was given over defendant's objection and exception tending to show that the medical examiner never in fact asked the question, consequently that the insured did not make the false answer, and that the answer as it appears in the application was solely the act of the medical examiner.

A copy of the application was annexed to the certificate physically, and was made a part thereof by appropriate reference. Section 232 of the Insurance Law (as added by Laws of 1911, chap. 198) also provides that the application for membership and medical examination signed by the applicant shall constitute part of the agreement between the society and member. The application contains the following provision: " I further agree that the statements and answers made herein, the pen or photographic copy of which being attached to my certificate, shall be held to be my statements, and I agree that any untrue answer   *   *   * shall immediately, whether material to this risk or otherwise, without process, render the certificate issued null and void, and in such event I agree to forfeit both such certificate and all payments that shall have been made thereon."

At the close of the whole case each party moved for the direction of a verdict. The court thereupon directed a verdict in favor of the plaintiffs.

The contention of the appellant is, in substance, that since the application was signed by the insured, and a copy thereof physically attached to the certificate and delivered therewith to the insured, the retention of the certificate and application, with the false statement therein, serves as matter of law to estop the plaintiffs from claiming that the falsity of the answer was the act of defendant's agent.

In the case of *Sternaman* v. *Metropolitan Life Ins. Co.* (170 N. Y. 13), followed by *Butler* v. *Michigan Mutual Life Ins. Co.* (184 id. 337), it was held that when an applicant for insurance made truthful answers to questions propounded by the medical examiner, who recorded them erroneously or falsely, such falsity would not avoid the policy. That decision was placed upon the broad ground that an insurance company " could not take the money of the insured while he lived and, when he was dead, claim a forfeiture on account of what it knew at the time it made the contract of insurance, for that would be a fraud." (P. 23.) That was a principle well established in the State by many decisions from the time of *Van Schoick* v. *Niagara Fire Ins. Co.* (68 N. Y. 434). Whether it be said to rest on estoppel or waiver or both is immaterial. It was in fact an arbitrary rule adopted for equitable ends to meet recognized and inevitable conditions existing in the *quasi*-public business of insurance. (See 26 Columbia L. Rev. 203.)

No consideration was given, so far as the opinion shows, to the effect of the presence or absence of the application as a physical part of the policy.

The *Sternaman* case was decided in 1902. In 1904 the case of *Hook* v. *Michigan Mutual Life Ins. Co.* (44 Misc. 478; affd., 139 App. Div. 922) distinguished the *Sternaman* case by saying that there it did not " appear that copies of the application and medical examination were delivered with the policy." It was held that where such copies were delivered with the policy, the usual rule applicable to contracts generally (See *Miller* v. *Phœnix Mutual Life Ins. Co.*, 107 N. Y. 292, 296) prevailed; and that it was incumbent upon the insured to examine them, and that he could not escape the consequences by failing to do so.

To the same effect was *Carmichael* v. *John Hancock Mutual Life Ins. Co.* (116 App. Div. 291, 294), decided in December, 1906.

By the Laws of 1906, chapter 326, what is now section 58 of the Insurance Law of 1909 was added to the Insurance Law of 1892. It is said in *Archer* v. *Equitable Life Assur. Soc.* (218 N. Y. 18)

that this statute was intended to cure certain conditions existing at the time of its enactment, one of which was that the warranties and representations made by the insured in the process of issuing the policy might be and frequently were retained exclusively by the insurers; so that the persons insured " had not incentive or opportunity  *  *  *  to examine and correct any errors in them arising through mistake, carelessness, ignorance or fraud, or to terminate the policy."

Among other cases dealing with the effect of section 58 of the Insurance Law was *Bollard* v. *New York Life Ins. Co.* (98 Misc. 286; affd., 182 App. Div. 915; affd., 228 N. Y. 521), decided by the Appellate Term in the First Department in 1917, with an opinion by Judge LEHMAN. As in the *Hook* case, the *Sternaman* case was distinguished by saying that " there is no evidence that the insured or the beneficiary ever received the application or saw it after it was signed."

The result reached was the same as in the *Hook* and *Carmichael* cases. But just what additional effect section 58 had on the rule of law stated in those cases was not distinctly pointed out, although it was said that " it was the evident purpose of the Legislature that each party to the contract was to receive complete copies of the contract so that there might be no dispute as to what the contract contained or what it was intended to contain. It would certainly seem anomalous if under such circumstances a defendant who has complied with the statute were estopped from using the contract or relying on its contents, merely because the other side had not examined or read the contract and relied upon the expectation that its contents would conform to oral statements."

The *Bollard* case went on its way to the Court of Appeals, and along with it went *Stanulevich* v. *St. Lawrence Life Assn.* (183 App. Div. 111), which had taken the contrary view, and adhered to the rule in the *Sternaman* case. Both appeals were decided at nearly the same time. The *Bollard Case* (228 N. Y. 521) was affirmed without opinion. The *Stanulevich Case* (228 N. Y. 586) was reversed on the authority of the *Bollard* case, and of *Baumann* v. *Preferred Accident Ins. Co.* (225 N. Y. 480), the brief *per curiam* opinion saying that " the application being a part of the policy, the insured and assured are bound by its terms, as it is part of the contract of insurance. The application in question was signed by the plaintiff. The plaintiff cannot maintain his present action."

The effect of that decision is not clear. While the *Bollard* case was an action on a policy of life insurance to which section 58 plainly applied, the *Stanulevich* case was an action to recover sick benefits under an accident and health policy. In the Appellate

Division it seems to have been treated as falling within section 58. Before it was reached in the Court of Appeals, that court had decided in *Baumann* v. *Preferred Accident Ins. Co.* (225 N. Y. 480) that section 58 was applicable only to life insurance policies. It seems reasonable to allocate to that point the citation of the *Baumann* case in the *Stanulevich per curiam*. It could hardly be authority for any other point, since the misstatement involved in the former case was held to be the act of the insured, whereas in the latter it was clearly the act of defendant's agent. The almost inevitable inference, then, is that the language of the *per curiam* was intended to be taken literally, and that whenever the application, regardless of the requirement of any statute, is signed by the insured, and is made physically a part of the policy, it becomes part of the contract of insurance and both parties are bound by its terms.

At this point, therefore, under the authority of the *Hook, Carmichael, Bollard* and *Stanulevich Cases* (*supra*) the broad and equitable doctrine of the *Sternaman* case seems to have been so far limited as to be inapplicable when a copy of a signed application was delivered to the insured with and as part of the policy.

In *Grubiak* v. *John Hancock Mut. Life Ins. Co.* (212 App. Div. 126), a case falling within section 58, the holding in the *Bollard* case was followed. The statement in the opinion (pp. 127, 128) that prior to the statute the decision would have been otherwise, was true as to the Second Department. It was not true under the *Carmichael* case in the First Department, nor under the *Hook* case in the Third Department.

In *Hessler* v. *North River Ins. Co.* (211 App. Div. 595), which was concerned with a fire and theft policy on an automobile, no written application was involved; but the alleged warranty of unconditional ownership, not in truth made by the insured, was written into the policy itself. The plaintiff placed the policy in a safe deposit box without reading it. This court followed the old doctrine and held that the retention of the policy under such circumstances did not estop the plaintiff.

In *Davern* v. *American M. L. Ins. Co.* (214 App. Div. 754) a similar question came before this court, and the decision below, in favor of plaintiff, was affirmed on the authority of the *Hessler Case* (*supra*). Upon appeal to the Court of Appeals the decision was affirmed (241 N. Y. 318), Judge LEHMAN writing for the court.

The action was on a liability policy covering an automobile. A schedule of declarations, annexed to the policy, contained certain misrepresentations. The insured had filled out and sent to defendant what was in effect an application. The misrepresentations

were not in that application. The insured never made them. They were written into the policy by the defendant. The insured upon receipt of the policy put it away without reading it. The defendant contended that plaintiff was chargeable with knowledge of the terms of the policy and by its retention must be deemed to have accepted them. The court said: " Offer and acceptance of the policy made its terms binding upon both parties. Negligent failure on the part of the plaintiff to read the contract would not change its binding character. If plaintiff should have read the policy, if the defendant had a right to assume that the plaintiff would read the contract or assented to its terms without reading it, then the apparent assent evidenced by retention of the policy without objection would bind the plaintiff as completely as if every term had been discussed and agreed upon in advance. * * * The question in this case is whether the defendant was justified in regarding as assent to all the terms of the policy its retention by the plaintiff without objection or whether on the contrary the plaintiff had the right, without reading it, to rely on the defendant sending a policy which contained only declarations actually made, and the defendant misled the plaintiff into apparent acceptance of a contract containing false affirmations."

And that, it would seem, must now be the question in all such cases. Sometimes it may be determined as one of law. That is ordinarily so where the case is one of life insurance falling within section 58. In that part of the *Davern* opinion where Judge Lehman discusses the *Bollard* case, we find a more explicit statement of the effect of section 58. Because of the statute, the insured is conclusively presumed to know that the application will be a part of the policy and, therefore, the " duty [is] laid upon [him] to examine the policy to detect error or misunderstanding." (P. 326.) On the other hand, as in the *Davern* case, the circumstances may be such as to leave no room for possible error, and then it may be held as matter of law that the insured was not bound to examine the policy.

Between those extremes will fall cases where the facts are disputed and where different inferences may be drawn. In such cases it must be for the trier of fact to say whether a duty to examine rested on the insured and whether the company was justified in regarding the retention of the policy as assent to all its terms.

Something, therefore, seems to have been added to the modified rule in the *Sternaman* case, or at least, something implicit therein, has been pointed out by the *Davern* case. In the light of the *Davern* case, such a state of facts as was involved in the *Stanulevich* case is not necessarily conclusive against an insured. At least

we have not yet been told so and we should be slow further to weaken a beneficent rule.

I come to the present case. Section 58 of the Insurance Law probably does not apply to the contract in question. (Insurance Law, § 230, subd. 4, as added by Laws of 1911, chap. 198; *Hoff* v. *Hoff*, 175 App. Div. 40.) But the insured must, it is supposed, be conclusively presumed to have known that the application signed by her was part of her contract. (Insurance Law, § 232, as added by Laws of 1911, chap. 198.) That, however, does not mean that she was bound to know that it would be physically attached to the certificate and delivered to her.

In addition to the facts stated above the evidence shows that the insured was a Polish woman who could not read, write, speak or understand English. The certificate with a copy of the application annexed was delivered to the insured on or about July 7, 1922. She died of heart failure March 17, 1924. There is no evidence to show whether she ever had read to her the certificate and application or not.

Upon all the evidence it was a question for the trier of fact whether the defendant was justified in regarding retention of the contract without objection as an assent to the untrue statement or whether on the contrary the insured had the right, without reading it, to rely on its containing no statements except those actually made by her.

Since each party moved for a direction of the verdict, that question of fact was for the trial judge and must be deemed to have been determined in favor of the plaintiff. (*Trimble* v. *N. Y. C. & H. R. R. R. Co.*, 162 N. Y. 84; *Davern* v. *American M. L. Ins. Co.*, 241 id. 318, 327.) Owing to changes in the Insurance Law through the amendment and repeal of certain sections, it is at least arguable that section 58 now applies to such contracts as the one in suit. Even though that were so, the result would be the same. Rescission is not pleaded here. (*Charlton* v. *Metropolitan Life Ins. Co.*, 202 App. Div. 814; affd., 234 N. Y. 639.) And in any event, the facts would be taken as determined against defendant.

The judgment should be affirmed, with costs.

HUBBS, P. J., and CLARK, J., concur; SEARS and TAYLOR, JJ., dissent in an opinion by SEARS, J., and vote for reversal on the law.

SEARS, J. (dissenting). The opinion of the majority of the court assumes, as I read it, that the false statement in the application in relation to the number and ages of the insured's children

is such as to render the policy void in case the plaintiffs are bound by it. This assumption must be correct. The contract specifically provides that any false statement in the application renders the contract void. Its materiality is not open to question. Section 58 of the Insurance Law declares that in certain policies such statements, although agreed to be warranties, are, nevertheless, to be treated as representations invalidating the contract only in case they are material. But section 58 of the Insurance Law has no application to the contracts of fraternal benefit organizations. (*Hoff* v. *Hoff*, 175 App. Div. 40.)

The determining question in this case is whether the plaintiffs are estopped by the conduct of the insured from disputing the fact that the warranty in the application was in fact the warranty of the insured. Here I feel constrained by the authority of *Stanulevich* v. *St. Lawrence Life Assn.* (228 N. Y. 586). It seems to me on all fours with the instant case. There, as here, section 58 of the Insurance Law was not applicable. (*Baumann* v. *Preferred Accident Ins. Co.*, 225 N. Y. 480.) There, as here, the application was a part of the policy. In the present case that is so both by the terms of the contract and by virtue of section 232 of the Insurance Law (as added by Laws of 1911, chap. 198). There, as here, the application was physically annexed to the policy. In that case, as in the present one, the insured was illiterate.

In *Davern* v. *American M. L. Ins. Co.* (241 N. Y. 318) it is recognized that under certain circumstances (substantially like those here presented) an insurance company has the right to rely upon the correctness of answers made part of the policy; and in view of the decision of the court in the *Stanulevich* case, I must vote for reversal.

TAYLOR, J., concurs.

Judgment affirmed, with costs.