McCurn, J.
The defendant Travelers Insurance Company, under date of August 15, 1940, issued its life insurance policy in the principal sum of $3,510 on the life of one Willard Blatz. The insured having died on September 21, 1943, his parents, the plaintiffs herein who were named beneficiaries in the policy, brought this action to recover in the first cause of action set forth in the complaint the principal sum of $3,510 and, in the second cause of action, an additional sum of $3,510 based upon a supplemental contract attached to the policy providing for additional indemnity in case of accidental death.
*11 It appears that on March 5, 1941, the insured was inducted into the armed service. He later became a pilot in the army-air force and met his death while engaged in his duties as an army airplane pilot on September 21,1943.
. It is the contention of the defendant that death of the insured while engaged in military aeronautics was a risk excluded from coverage under the policy and that its only liability now is for the amount of the reserve on the policy, less any indebtedness thereon. At the close of the evidence the trial court granted defendant’s motion for a dismissal of the second cause of action for additional indemnity. Counsel for each party moved for a direction of a verdict as to the first cause of action brought to recover the principal sum under the policy and the court, after taking the motions under advisement, directed a verdict in favor of the defendant.
The additional indemnity contract upon which plaintiffs’ second cause of action was predicated was attached to the policy at the time it was issued. It provided in substance that in consideration of a monthly premium of forty-two cents the company would pay an additional indemnity of $3,510 to the beneficiaries named in the life contract in the event of accidental death of the insured occurring under circumstances prescribed therein, providing such death did not result from “(c) Any act of war, or while in military or naval service in time of war ”, 0The additional indemnity contract further provided that additional indemnity ‘ ‘ shall not be payable if the death of the Insured shall result from injuries sustained in any military or naval aircraft or in any form of aviation travel or hazard not herein specified, nor for death resulting from injuries sustained by the Insured while acting as a pilot, navigator or mechanic of an aircraft.” It is clear, therefore, that the insured’s death occurred under circumstances not covered by the additional indemnity contract attached to the policy and that the second cause of action predicated upon such additional indemnity contract was properly dismissed.
The terms of the additional indemnity contract applied to additional indemnity only and cannot be construed to apply to the normal indemnity under the.life contract. -The defendant contended and the trial court found that a so-called aviation rider signed by the insured, but not attached to or indorsed upon the policy, was likewise a bar to plaintiffs’ recovery on the first cause of action for the face amount of the life policy. The aviation rider by its terms purported to apply to the life policy and to exclude the risk of death resulting directly or *12 indirectly from flight in any species of aircraft except when riding as a passenger on a licensed passenger aircraft. It is the plaintiffs’ contention here, however, that such aviation rider was not a part of the policy.
The insurance agent who solicited the insured’s application for the policy testified "that on August 19, 1940, when he went to the insured’s home for the purpose of delivering the policy, he opened for the first time the envelope containing the policy which had been sent from the home office of the company. He found in the envelope the company’s form L 605 (the aviation rider) together with a letter or memorandum from the company instructing him to obtain the signature of the insured to the aviation rider upon delivery of the policy. The agent testified that he told the insured he had not seen this form until he opened the envelope and thought there must be some mistake and did not wish to have the insured sign it until he had an opportunity to check with the Buffalo office of the company. The agent testified that he left the policy with the insured and the next morning discussed the matter of the rider with the assistant cashier who instructed"him to obtain the insured’s signature to the aviation rider. He then called the insured on the telephone and told him what he had found out from the assistant cashier and requested the insured to come into the office. He further testified that within a djty or two the insured appeared at the office and signed the rider which in due course was sent to the home office of the company. He gave the insured what he characterized as a copy of the aviation rider but which actually was the printed form bearing neither the insured’s signature nor any written or printed copy thereof. The agent further testified that the day after he heard of the death of the insured he called at the home of the insured’s parents who produced the policy and that he then saw the copy or unsigned form of the aviation rider in the envelope in which the policy had been kept. The plaintiffs testified that they had never seen the copy of the aviation rider and that it "was not in the envelope which contained the policy. The court, however, in directing the verdict will be deemed to have determined any question of fact in favor of the defendant. (Kwiatkowski v. Brotherhood of American Yeomen, 216 App. Div. 647, 653).
The essential fact which remains undisputed is that neither the original aviation rider nor any duplicate of the same nor even the unexecuted copy was ever physically attached to the policy. The insurance company was not free to make a binding *13 contract with its insured changing or limiting the terms of the life policy without attaching such contract to the policy when issued so as to make it a part thereof. When the company delivered its policy to the insured and received the premium thereon, section 142, subdivision 1, of the Insurance Law became a part of the policy. That section and the policy must be read together (Archer v. Equitable Life Assurance Society, 218 N. Y. 18).
Section 142, subdivision 1, of the Insurance Law reads in part as follows: “ Every policy of life, accident or health insurance, or contract of annuity, delivered or issued for delivery in this state shall contain the entire contract between the parties, and nothing shall be incorporated therein by reference to any constitution, by-laws, rules, application, or other writings, unless a copy thereof is endorsed upon or attached to the policy or contract when issued.”
The policy itself under its general provisions provides: ‘ ‘ Entire Contract — This instrument and the application constitute the entire contract between the parties hereto * * *.” It provides further: “ Incontestability — This contract shall be incontestable after it shall have been in force during the lifetime of the Insured for a period of two years from its date of issue except for non-payment of premiums, and except for violation of the conditions of the contract relating to military or naval service in time of war if such service shall be restricted by indorsement hereon at date of issue. It is otherwise free from conditions as to residence, occupation, travel or place of death.” (Emphasis supplied.)
While the defense of noncoverage is not ordinarily barred by the incontestability clause (Matter of Metropolitan Life Ins. Co. v. Conway, 252 N. Y. 449, 452), nevertheless the plain meaning of the language used in that clause in this policy is that the contract is free from conditions as to residence, occupation, travel, etc., except for military or naval service in time of war if such service shall be restricted by indorsement on the policy at date of issue.
The company apparently recognizes the requirement for attaching the aircraft rider to the policy because the printed form recites “ supplemental agreement Attached to and made a part of life contract No.” etc. (Emphasis supplied.) At the. bottom of it are the words “ executed in duplicate ”. Its agent in this instance, however, failed to have it executed in duplicate; he did not attach it to the policy but simply handed the insured the blank form two days after the time when the policy was given to him.
*14 The defendant argues that the legend (apparently put on by a rubber stamp on the first page of the policy) “ Insurance modified by aircraft rider No. L605 attached ” together with the fact that the aircraft rider form was delivered to the insured is sufficient compliance with section 142 of the Insurance Law. The wording of the’ statute itself would seem to answer that contention. It provides: ‘ ‘ nothing shall be incorporated therein by reference to any * * * or other writings unless a copy thereof is endorsed upon or attached to the policy or contract when issued.” It was stated by Collin, J., in Archer v. Equitiable Life Assurance Society (218 N. Y. 18, 22, supra) that one of the conditions which the statute was designed to remedy was that “ the contract might, by a stipulation or reference within it, make a part of itself instruments, stipulations, statements and agreements of the insured, which the policy did not contain.”
The unsigned form delivered to the insured by the agent was not strictly speaking a copy of the instrument which the insured signed and the agent retained. The word ‘‘ ‘ copy ’ implies that the instrument so labeled is identical with another instrument.” (Estate of Janes, 18 Cal. 2d 512, 516.) The form handed to the insured had no copy of his signature upon it. In National Labor Relations Board v. Suburban Lumber Company (121 F. 2d 829, 834) Clark, J., writing for the Circuit Court of Appeals concerning a copy of an order required to be served, states: “ It requires no citation to sustain the view that an unsigned and undated paper is not a copy of an order that has .a signature and a date.”
The statute requires that a copy thereof be indorsed or attached to the policy or contract. Certainly it was not indorsed and the word “ attached ” when used in this connection ordinarily means “ physically attached or bound together ” (State v. Modern Box Makers, Inc., 217 Minn. 41, 45). The Supreme Court of Pennsylvania construing a similar statute held that the phrase “ attached to ” must be given i,ts dictionary definition which is “ ‘ to bind, fasten, tie or connect; to make fast or join, as to attach with a string,’ ” and that it was not enough to have an amendment to a policy folded and placed in the same envelope (Frost v. Metropolitan Life Ins. Co., 337 Pa. 537, 540, and cases cited therein).
Here there was nothing in the application which the insured signed whereby he agreed that the risk of death while riding in or operating military aircraft should be excluded from coverage under the policy. The policy as written and which according *15 to its terms included the whole contract contained no such exclusion. To give effect now after the insured’s death to such an agreement outside of the policy would he contrary to the statute (Insurance Law, § 142, subd. 1) and to the public policy which resulted in its enactment.
It may seem technical to require a physical attachment of a rider tó a policy but this is the plain meaning of the statutory requirement. The very dispute involved on this appeal could have been prevented had the insurance company complied with the statute. To permit a. loose interpretation of the phrase “ attached to ” would be to open up endless litigation construing a statute which was designed to avoid just such litigation.
The defendant argues that the contract of insurance was not completed until the rider was executed and suggests that if the rider was not in force then the policy itself would not be "in force. It was the company’s duty to attach the rider to the policy when issued. It was not attached when the policy was issued and the company’s agent to whom it intrusted the delivery of the policy and the collection of the premiums, knew all the. facts at the time he delivered the policy and during the time that he afterwards collected the premiums during the lifetime of the insured. The company should not be allowed, with full knowledge of the facts, to take the benefit of the contract and then, when called upon to perform, assert that there was no contract. (See Wood v. American Fire Ins. Co., 149 N. Y. 382, 386.)
The judgment appealed from should be reversed and judgment directed to be entered in favor of the plaintiffs on the first cause of action.
Present — Taylor, P. J., Dowling, Harris, McCtjrn and Larkin, JJ.
Judgment reversed on the law, with costs, and judgment directed in favor of the plaintiffs in accordance with the opinion, with costs. All concur.