THE TRAVELERS INSURANCE COMPANY, Appellant, *v.*
MORRIS POMERANTZ et al., Respondents.

Insurance — contract — rescission — meaning of statement
in application in reference to medical attention — material
misrepresentation — proof thereof makes prima facie case for
rescission — insurer not estopped by receipt of second premium
by agents where tender was refused by executive officers within
reasonable time.

1. A statement in an application for life and disability insurance
which reads, "I am not deformed; I have had no bodily or mental
disease, nor have I received medical or surgical attention within the
past five years," enumerates three distinct subjects, deformity;
previous bodily or mental disease; medical or surgical attention within
the past five years. A holding, therefore, that the statement meant
the applicant had received no medical or surgical attention within
the past five years for a bodily or mental disease, is error.

2. A misrepresentation in that the applicant, who made no excep-
tion to the statement, had received medical attention no less than
twelve times from five physicians, was material. The insurer had a
right to know whether the attention was for an inconsiderable or
serious ailment, and any misrepresentation which defeated or seriously
interfered with the exercise of such a right cannot be said to be
immaterial.

3. Proof of such misrepresentation makes out a *prima facie* case in
an action for rescission of the policy and where defendant neither denied
nor explained his untrue application and gave no information concern-
ing the state of his health at the time of his medical attention or on
the dates of his application or of his payment of the first premium, a
finding of material misrepresentation should have followed.

4. The receipt of the second premium by plaintiff's general agents
does not estop it from contesting the policy where the only fair infer-
ence to be drawn from the evidence is that plaintiff whose branches
were widely scattered and which at the time was engaged in con-
testing this policy repudiated the proffered benefit within a reasonable
time after its responsible executive officers were enabled to know that
it held defendant's money in its possession.

*Travelers Ins. Co.* v. *Pomerantz*, 218 App. Div. 431, reversed.

(Argued June 21, 1927; decided July 20, 1927.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered December 9, 1926, affirming a judgment in favor of defendants, entered upon a dismissal of the complaint by the court on trial at Special Term in an action for the rescission of a policy of life and disability insurance for material misrepresentations.

*William J. Moran* for appellant. There is no ambiguity to be resolved against the appellant in paragraph " 12 " of the insured's application. The rule *contra proferentem* may not be applied herein. (*Mutual Life Ins. Co.* v. *Hurni Packing Co.,* 260 Fed. Rep. 645; *Saad* v. *N. Y. Life Ins. Co.,* 201 App. Div. 546; *Preston* v. *Ætna Life Ins. Co.,* 193 N. Y. 144; *Houlihan* v. *Preferred Accident Ins. Co.,* 196 N. Y. 340; *Kreiss* v. *Ætna Life Ins. Co.,* 229 N. Y. 54; *Nelson* v. *Traders Ins. Co.,* 181 N. Y. 472; *Metzer* v. *Ætna Life Ins. Co.,* 227 N. Y. 417; *Witherstine* v. *Employers' Liability Assur. Co.,* 235 N. Y. 168; *Satz* v. *Mass. Bonding & Ins. Co.,* 243 N. Y. 385.) The facts established by the evidence, which stood unchallenged by any evidence for the respondents, that the insured received medical attention when he was sick which he failed to disclose in his application, constitute material misrepresentations and alone justified the rescission of the policy herein. (*Stanulevich* v. *St. Lawrence Life Assn.,* 228 N. Y. 586; *Saad* v. *N. Y. Life Ins. Co.,* 235 N. Y. 550; *Archer* v. *Equitable Life, etc., Assn.,* 218 N. Y. 18; *Satz* v. *Mass. Bonding & Ins. Co.,* 243 N. Y. 385; *Kwiatkowski* v. *Brotherhood of Am. Yeomen,* 243 N. Y. 394; *Mutual Life Ins. Co.* v. *Hurni Packing Co.,* 260 Fed. Rep. 641; *Sparer* v. *Travelers Ins. Co.,* 185 App. Div. 861; *Thorner* v. *John Hancock, etc., Ins. Co.,* 164 App. Div. 34; *Hoffman* v. *Metropolitan Life Ins. Co.,* 141 App. Div. 713; 147 App. Div. 893; *Grubiak* v. *John Hancock, etc., Ins. Co.,* 212 App. Div. 126.)

*Louis Salent, Stanley B. Ecker* and *Eugene J. Raphael* for respondents. Appellant is estopped to claim rescis-

sion because of the acceptance and retention for an unreasonably long time of the second premium with full knowledge of the facts. (*McNeilly* v. *Continental Life Ins. Co.*, 66 N. Y. 23; *East* v. *Prudential Ins. Co.*, 11 App. Div. 190; *McNaught* v. *Equitable Life Assur. Society*, 136 App. Div. 774; *Clark* v. *Kirby*, 204 App. Div. 446.) The evidence amply sustains the findings of the trial court, affirmed by the Appellate Division, that the assured had no bodily or mental disease within the meaning of the policy and that he made no material misrepresentation with regard thereto. (*Eastern District Piece Dye Works, Inc.*, v. *Travelers' Ins. Co.*, 234 N. Y. 441; *Dilleber* v. *Home Life Ins. Co.*, 69 N. Y. 256; *Cushman* v. *U. S. Life Ins. Co.*, 70 N. Y. 72; *Schmidt* v. *Michigan Mut. Life Ins. Co.*, 101 App. Div. 12; *Connecticut Life Ins. Co.* v. *Union Trust Co.*, 112 U. S. 250.) The trial court and the Appellate Division properly construed the declaration that the assured had received no medical or surgical attention as meaning no medical or surgical attention for a bodily or mental disease. (*Bushey & Sons* v. *American Ins. Co.*, 237 N. Y. 24; *Genung* v. *Met. Life Ins. Co.*, 60 App. Div. 424; *Valentini* v. *Met. Life Ins. Co.*, 106 App. Div. 487; *Denavo* v. *Prudential Ins. Co.*, 154 App. Div. 840; *Diamond* v. *Met. Life Ins. Co.*, 116 N. Y. Supp. 616; *Brown* v. *Met. Life Ins. Co.*, 65 Mich. 306; *N. Y. Life Ins. Co.* v. *Moats*, 207 Fed. Rep. 481; *Blumenthal* v. *Berkshire Life Ins. Co.*, 134 Mich. 216; *Sargent* v. *Modern Brotherhood*, 148 Iowa, 600.)

O'BRIEN, J. Defendant, applying for a policy of life and disability insurance, signed this statement: " 12. I am not deformed; I have had no bodily or mental disease, *nor have I received medical or surgical attention within the past five years* except as herein stated." He made no exception and, accordingly, his statement is deemed to be wholly in the negative. He stated further in his

application that " every declaration hereinabove contained is true." The consideration for the policy issued to him May 10, 1922, is based upon his signed application, made part of the policy, as well as payment of the premium. February 28, 1923, defendant made claim for permanent total disability benefits stating that, as a result of a motor car collision in August, 1922, he became wholly disabled, that after this collision he began to feel pain in his heart and shortly thereafter had a severe heart attack and fainting spell and was advised by his physician not to attempt any form of occupation because his heart was in a weak condition. April 23, 1923, plaintiff informed the insured that it rescinded the policy and gave him notice of its intention to contest it, and tendered to him the amount of the premium. On May 4 plaintiff delivered six copies of the summons in this action to the sheriff who on June 19 certified to his failure to serve. They were, however, served by some one upon all these defendants, two on May 8 and all the others on May 23. The complaint was served June 7. The very day upon which the copies of the summons were delivered to the sheriff for service, the insured paid the second premium to plaintiff's general agents who were authorized to receive premiums. The agents tendered a return for this amount in June or at the beginning of July, 1923. All the elements included within the foregoing statements have been found as facts and are supported by the evidence.

The first question to be determined is whether defendant made any misrepresentation in his application. The answer depends upon the meaning of statement 12 in the application form. The courts below have decided that the statement, by fair interpretation, must be held to mean that defendant was not deformed, that he had had no bodily or mental disease and that he had received no medical or surgical attention within the past five years *for a bodily or mental disease*. If the statement were ambiguous, it would necessarily be resolved against

plaintiff, for plaintiff drew it. To us it does not seem doubtful. We can find no other meaning in it than the enumeration of three distinct subjects: 1, deformity; 2, previous bodily or mental disease; 3, medical or surgical attention within the past five years. If medical or surgical attention had been intended to refer only to bodily or mental disease, the statement ought to have been and presumptively would have been differently framed. Naturally, it would have read that the attention had been " for such bodily or mental disease " or " therefor " or " in connection therewith " or it would have included some other phrase expressing a relation between a disease and medical or surgical attention. The statement, as framed, affects the question whether an applicant not deformed and never afflicted with any bodily or mental disease had received within five years medical or surgical attention for injuries or for illnesses other than diseases. An applicant might have fractured his bones on twenty occasions or suffered at frequent intervals from indispositions which indicate a weak constitution and reveal a tendency toward disease but which had not yet developed into a definite disease. If any of the three parts of the statement was false, misrepresentation resulted. The applicant bound himself that " every declaration hereinabove contained is true;" the policy provides that " all statements purporting to be made by the insured shall in the absence of fraud be deemed representations and not warranties." That the statement was false in at least one particular is certain. He made no exception to any part of statement 12 and so must be deemed to have made it without qualification. The proof is that within the past five years he had received medical attention no less than twelve times from five physicians. The trial court refused to make such a finding but as the evidence is not contradicted the request to find should have been granted. (*Mawhinney* v. *Millbrook Woolen Mills*, 231 N. Y. 290.)

Misrepresentation, therefore, existed. Was it material?

In ascertaining the true answer, a complete separation of thought must be observed between a disease and some medical or surgical attention either for a disease or for an ailment other than a disease. A disease is one thing, medical or surgical attention for an injury or a disease or for an ailment other than a disease is quite a different one and we think that statement 12 clearly preserves the line of substantial distinction. Ailments, injuries, indispositions, sicknesses do not necessarily constitute diseases, although disease frequently develops from them. The words " deformity " or " infirmity " as used in connection with applications for insurance are, of course, construed to mean deformities or infirmities of such a substantial character as, *if known*, would have been liable to deter an insurer from issuing a policy. (*Eastern District P. D. Works, Inc.,* v. *Travelers Ins. Co.,* 234 N. Y. 441, 453, 454.) The same principle must be true respecting medical or surgical attention. The attention to which reference is made in statement 12 must be not for a trivial indisposition but for some substantial illness, sickness, injury or disease. The insurer has the right to an opportunity to know whether the attention was for an ailment inconsiderable or serious. Although no disease may have developed, symptoms which had required medical attention might indicate conditions from which disease might be generated. Depending upon the nature of the attention, whether trivial or substantial, an applicant might prove to be a poor risk or a sound one. The insurer indicated by statement 12 that it wanted to know the facts and that it intended and expected the applicant to speak the truth so that it might acquire information concerning them. Any misrepresentation which defeats or seriously interferes with the exercise of such a right cannot truly be said to be an immaterial one. How can an insurer discover the nature of an applicant's previous illness, subject perhaps to recurrence and apt to degenerate into a disease yet bearing no trace at the time of his

physical examination for the policy, if he falsely states that he had received no medical attention at all?

Plaintiff proved its case *prima facie* to the effect that the misrepresentation was material when it showed that within five years defendant had received medical attention a dozen times, that at least one medical consultation had been held, that digitalis had been prescribed in July, 1920, and that defendant was " sick " (*Klein* v. *Prudential Ins. Co.*, 221 N. Y. 449) when he received attention. It could not compel him to waive his privilege arising from his relation to his physicians and force them to disclose the diagnosis and the nature of the treatment. He may insist upon this privilege but he cannot be heard to claim that no *prima facie* case has been made out. He produced no witnesses and gave no evidence concerning vital facts which could be disclosed only by him. As a witness called by plaintiff, he testified in respect to a few formal matters. He neither denied nor explained the untrue statement in his application and he gave no information concerning the state of his health at the time of his medical attention or on the dates of his application or of his payment of the first premium. To hold that the proof under such circumstances is less than *prima facie* would be to condone and encourage misrepresentations and to impose upon a litigant conditions impossible of fulfillment. Plaintiff proceeded as far as the law allows and far enough, in the absence of denial, to require a finding of material misrepresentation. All evidence is to be weighed according to the proof which it was in the power of one side to have produced and in the power of the other side to have contradicted. (*Blatch* v. *Archer*, 1 Cowper, 63, 65; *Kirby·*v. *Tallmage*, 160 U. S. 379, 383; *Matter of Jordon* v. *Decorative Co.*, 230 N. Y. 522, 526, 527.) The finding to the effect that defendant received no medical attention for any bodily or mental disease is based, as we think, upon a wrong interpretation of the contract and is, therefore, immaterial. The finding that he received none

material. to the risk is subject to the same objection, is in effect a conclusion of law and moreover, is without evidence to support it. There was proof to the contrary and no rebuttal. Plaintiff produced evidence to show that the facts concerning which defendant made his misrepresentation were such as, if known, might have deterred it from accepting him as a risk. (*Eastern District P. D. W., Inc.,* v. *Travelers Ins. Co., supra.*) Suppose this applicant had truly answered statement 12 and admitted that he had received medical attention twelve times from five physicians but then stood upon his rights and refused to state the nature of the attention or the names of his doctors. What chance would he have had to obtain a policy? If, on the contrary, he had stated that he had been treated even once for some form of heart disorder, almost certainly his application would have been rejected. We do not say that legal proof of such treatment is in the record. We make the supposition to illustrate the necessity of a truthful statement by an applicant and to emphasize the materiality of the misrepresentation.

The receipt of the second premium by plaintiff's general agents on May 4, 1923, does not estop plaintiff from contesting this policy. Receipt by the agent is receipt by the principal (*McClelland* v. *Mutual Life Ins. Co.,* 217 N. Y. 336) but a mere temporary retention of the premium does not, under the circumstances, constitute any evidence of an intention to abandon the claim of rescission and to ratify the policy. The company, whose main office is located in Connecticut, was seeking at the time to effect service of process in this action upon defendants. The premium was paid to its general agents for a limited territory in Brooklyn. On the day upon which the summons in this action had been delivered to the sheriff for service, defendant paid the premium to a clerk in the office of the agents in Williamsburg and received a " temporary receipt " there-

for. The check was deposited by the agents to their own account in their own bank and the amount transmitted to plaintiff which returned it to its agents. The last of June or early in July the agents tendered the amount to defendant who refused it. All these facts were proved by uncontradicted evidence and do not conflict with any finding. On plaintiff's request, all should have been found and the exception to the refusal to find presents reversible error. (*Mawhinney* v. *Millbrook Woolen Mills, supra.*) The fact that the amount of the premium was in plaintiff's constructive possession for nearly two months does not indicate that it intended to retain any benefits therefrom and thus abandon its claim of rescission. It continued its efforts to effect service of the summons and succeeded on May 8 and finally on May 23. The complaint was served June 7. The only fair inference to be drawn from the evidence is that an organization whose branches were widely scattered and which at the time was engaged in contesting this policy repudiated the proffered benefit within a reasonable time after its responsible executive officers were enabled to know that it held defendant's money in its possession.

The judgment of the Appellate Division and that of the Special Term should be reversed and a new trial granted, with costs to abide event.

CARDOZO, Ch. J., POUND, CRANE, LEHMAN and KELLOGG, JJ., concur; ANDREWS, J., absent.

Judgment accordingly.