WAWZYN NOWAK, Appellant, *v.* THE BROTHERHOOD OF AMERICAN YEOMEN, Respondent.

MARY NOWAK et al., Appellants, *v.* THE BROTHERHOOD OF AMERICAN YEOMEN, Respondent.

(Argued May 1, 1928; decided July 19, 1928.)

*Merritt N. Baker* for appellants. The answers were not false as a matter of law and the direction of verdicts was erroneous. (*Dilliber* v. *Home Life Ins. Co.,* 69 N. Y. 256; *Higgins* v. *Phœnix Mut. Ins. Co.,* 74 N. Y. 6; *Travelers Ins. Co.* v. *Pomerantz,* 246 N. Y. 63; *Valentini* v. *Metropolitan Life Ins. Co.,* 106 App. Div. 487; *Crosby* v. *Security Mutual L. Ins. Co.,* 86 App. Div. 89; *Genung* v. *Metropolitan Life Ins. Co.,* 69 App. Div. 424; *Cushman* v. *U. S. Life Ins. Co.,* 70 N. Y. 72; *Schmitt* v. *Michigan Mutual L. Ins. Co.,* 101 App. Div. 12; *Fletcher* v. *Bankers Life Ins.*

*Co.*, 62 Misc. Rep. 546; 135 App. Div. 295; *Edington* v. *Mutual Life Ins. Co.*, 67 N. Y. 185; *Eastern D. F. Dye Works* v. *Travelers Ins. Co.*, 234 N. Y. 441; *Smith* v. *Travelers Ins. Co.*, 76 Misc. Rep. 441.)

*John H. Clogston* for respondent. The complaints were properly dismissed on account of the breach of warranty in the application. (*Preston* v. *Ætna Ins. Co.*, 193 N. Y. 142; *Saad* v. *N. Y. L. Ins. Co.*, 201 App. Div. 544; *Stanulevich* v. *St. Lawrence Life Assn.*, 228 N. Y. 586.)

KELLOGG, J. Two life certificates were issued by the defendant association to Apolonia Adamszyk, a member of the association. Death benefits were made payable upon the death of Apolonia Adamszyk, in the instance of one certificate, to the plaintiff in the first action, and, in the instance of the other certificate, to the plaintiffs in the second action. The death of the assured occurred, and thereupon these actions were brought to recover the stipulated death benefits. They were defended upon the ground that the assured, in her applications for certificates, had falsely warranted that she had never consulted a physician. The trial court, deeming that the falsity of the warranties had been conclusively proven, dismissed the actions.

The evidence showed that Josephine Zielinska, a daughter of the assured, upon her own initiative, requested Dr. Lehnis, a woman doctor, to call upon her mother. She stated that her mother had complained to her of constipation; consequently, she called the doctor. Her statement, on motion of the defendant, was stricken from the record, and the plaintiff excepted. Dr. Lehnis was called as a witness by the defendant. She stated that, at the request of the daughter, she attended the assured. Questions were asked and answered as follows: " Q. And were you called in your professional capacity? A. Yes, sir. Q. Did she consult with you? A. Yes, sir.

Q. And was she ill? A. Yes, she was. Q. And did you treat her? A. Yes." Having adroitly placed this proof in the record, without objection made, defendant's counsel, when the plaintiff's counsel asked the witness concerning the nature of the disorder from which the assured was suffering, expressed his solicitude lest anything improper be allowed in the case, and objected to the proof. The objection was sustained. Later, when Josephine Zielinska, the daughter, was asked to give the talk between Dr. Lehnis and her mother, an objection was made. Notwithstanding the fact that the bar of section 352 of the Civil Practice Act, prohibiting the revelation of confidential communications made to a physician, runs only against the physician himself, the objection was sustained, the court, curiously enough, remarking that if Dr. Lehnis was re-examined he would permit her to tell the conversation. No exception, however, was taken to the ruling. It appears further that Dr. Lehnis spoke only English while the assured spoke only Polish. The only communication made by the physician to the assured, or by the assured to the physician, was through the daughter, Josephine Zielinska, who interpreted the questions put and the answers made. It does not appear, therefore, that the topic of conversation was the sickness of the assured. The defendant relies, to support the judgment, upon the bare statement of a physician that the assured consulted with her, although the physician understood no word of the conversation between herself and her supposed patient. So far as the record discloses, or the physician knew, the assured may have talked only concerning the weather, or may have gossiped about her neighbors without more. It must be remembered, also, that the assured did not herself call the physician to attend her. We cannot even infer, therefore, that the conventional relationship of doctor and patient had been established between them.

∎

What was the purpose of the question, "Have you ever consulted a physician?" which the defendant propounded to the assured? To the assured, who was questioned, what answer did it reasonably seem to call for? The assured was sixty years of age. Did the question require the assured to recall the occasion of every illness, great or little, every childish disease, every headache or cold, throughout her long life, when a physician had prescribed for her a cathartic, a quinine pill, or other simple remedy? She had already stated in the questionnaire presented to her that she had had a daughter. Naturally she must have had a physician in attendance. The questioner must have known it. Why then did it ask if she had ever consulted a physician? Evidently, it did not mean her to specify a consultation of that character, for the fact that she had borne a child would not of necessity affect her present health.

In *Cushman* v. *U. S. Life Ins. Co.* (70 N. Y. 72) an assured, who warranted the truth of his answers, had stated that he had never had a disease of the liver, although upon several occasions he had been treated for congestion of the liver, and that was the malady from which he died. It was held that his answer was not untruthful. EARL, J., said: "By the questions inserted in the application, the defendant was seeking for information bearing upon the risk which it was to take, the probable duration of the life to be insured. It was not seeking for information as to merely temporary disorders or functional disturbances, having no bearing upon general health or continuance of life. Colds are generally accompanied with more or less congestion of the lungs, and yet in such a case there is no disease of the lungs which an applicant for insurance would be bound to state."

The question, "Have you ever consulted a physician?" was immediately preceded by the question, "Are you in good health?" What more natural than for the assured,

who had just answered the latter question in the affirmative, to think that the former question required of her an affirmative answer only provided a previous consultation with a physician was in relation to a disorder which affected her present state of health. It might well have appeared to the assured that the defendant was not " seeking for information as to merely temporary disorders or functional disturbances, having no bearing upon general health or continuance of life."

The nature of the conversation between Dr. Lehnis and the assured, as we have shown, was not revealed. Without knowledge upon the subject we do not think that a court could justly say that, as a matter of law, there was a consultation by the assured with Dr. Lehnis. True, Dr. Lehnis testified flatly that the assured did consult with her. Whether she did or not is in part a legal question as to which the physician possessed no judgment. Moreover, we think it was error for the trial court to strike out the testimony of Josephine Zielinska as to the nature of the disorder of which she complained. Such evidence was not hearsay for it was not offered to prove the nature of the mother's complaint. (Wigmore, sec. 1361.) It was tendered to show the motive which prompted the daughter to call the physician. It tended to prove the purpose with which the doctor called; that she attended to treat a case of constipation. It tended to offset the inference, which otherwise might arise from the bare fact of her attendance, that there was consultation between doctor and patient.

The judgment of the Appellate Division and that of the Trial Term in each action should be reversed and a new trial granted, with costs to abide the event.

CARDOZO, Ch. J., CRANE, LEHMAN and O'BRIEN, JJ., concur; ANDREWS, J., concurs in the result; POUND, J., dissents on the ground that the insured had consulted a physician within the meaning of the policy.

Judgments reversed, etc.