LESLIE JENKINS, Respondent, *v.* JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, Appellant.

(Argued October 2, 1931; decided October 20, 1931.)

*Thomas McCall, Leonard M. Gardner* and *Frederick C. Tanner* for appellant. The material misrepresentations made by the insured rendered the policies of insurance

void. (*Travelers Ins. Co.* v. *Pomerantz*, 246 N. Y. 63; *Minsker* v. *John Hancock Mut. Life Ins. Co.*, 254 N. Y. 333; *Schrader* v. *John Hancock Mut. Life Ins. Co.*, 232 App. Div. 644; *Saad* v. *New York Life Ins. Co.*, 201 App. Div. 544; 235 N. Y. 550; *Rudolph* v. *John Hancock Mut. Life Ins. Co.*, 251 N. Y. 208; *Cirrinciani* v. *Metropolitan Life Ins. Co.*, 223 App. Div. 461; *Nowak* v. *Brotherhood of America Yeomen*, 249 N. Y. 78; 252 N. Y. 465; *Hoff* v. *Hoff*, 175 App. Div. 40; *Kwiatkowski* v. *Brotherhood of American Yeomen*, 216 App. Div. 647; 243 N. Y. 394; *Baumann* v. *Preferred Accident Ins. Co.*, 225 N. Y. 480; *Cushman* v. *United States Life Ins. Co.*, 70 N. Y. 72.)

*Robert M. Hitchcock* for respondent. As a matter of law it cannot be held that the evidence of previous medical attention is sufficient to constitute either fraud or material misrepresentation. (*Travelers Ins. Co.* v. *Pomerantz*, 246 N. Y. 63; *Minsker* v. *John Hancock Mut. Life Ins. Co.*, 254 N. Y. 333; *Eastern District P. D. Works* v. *Travelers Ins. Co.*, 234 N. Y. 441.)

POUND, J. The action is brought on a life insurance policy for $3,000 issued by the defendant on the life of Martha Jenkins without a medical examination. The policy was applied for on April 11, 1929. The insured died on July 27, 1929. The cause of death was pulmonary tuberculosis.

In her written application for the policy, attached to and made a part thereof, the insured, having stated that she was at the time in good health, was asked the following question: " Have you ever had or been treated for any of the following? Answer yes or no to each. If yes, give full particulars in space below." Then follows a list of twenty-seven enumerated diseases and a question, " any surgical operation? " The list includes consumption, pleurisy and discharge from the ear. A blank space is left for " details of illnesses recorded above." To each of these questions the applicant recorded a

negative answer. To a question, " have you ever received or applied for treatment in any hospital, dispensary, sanitarium, cure or other institution? " she answered in the negative. Then followed the question, " have you within the past five years had medical advice for any disease or disorder not included above? Give full particulars." She answered, " no."

The proofs of death include a certificate of Dr. Lang, in which he says he treated the insured for a week in March, 1929, for acute tonsilitis, and again in April, 1929, for pleurisy, dry bronchitis, and that further examination revealed a tubercular affliction. He testified, however, that at some uncertain date, which perhaps was April 4, 1929, but might have been July 4, he treated the insured and reported her case to the bureau of preventable diseases in the city Department of Health. The Appellate Division came to the conclusion that the evidence of Dr. Lang as to the date when he treated the insured for tuberculosis in relation to April 11, 1929, the date of the application, was sufficiently conflicting to make a question of fact for the jury whether he had treated her before or after that date.

Another certificate was furnished by Dr. Matez. He says he treated the insured for a week for grippe in April, 1928; May 9, 1928, for two weeks for purulent otitis of the right ear, and September 14, 1928, for salpingitis, left. Purulent otitis means medically an inflammation of the ear with discharge of pus. Salpingitis is inflammation of a Fallopian tube. Insured was absent from work four days with the grippe but she did not leave her work on the other occasions when she consulted Dr. Matez.

Another certificate was made by Dr. Conklin. He attended her during her last illness at the hospital where she had been for three weeks prior to her death. He had been her attending physician from May 31, 1929. His opinion from the patient's statement was that her

health was first impaired three years ago. Dr. Williams, another attending physician at the hospital, certifies to the same effect. Nothing conclusive appears in these certificates and Dr. Rosenfield, another attending physician, says that in his opinion her health was first impaired in May, 1929.

On this evidence the trial justice set aside a verdict in favor of plaintiff, who was the husband of the insured and the beneficiary named in the policy, and dismissed the complaint. The Appellate Division reversed and reinstated the verdict on the ground that although the insured died of pulmonary tuberculosis (which is a form of consumption which may have a brief duration but is said to be most common as the termination of a chronic affection of the lungs), it did not appear that she had been treated for that disease before the policy had been taken out, and the jury might find that the ills for which she had consulted a physician prior to applying for insurance were trivial disorders which had not affected her present state of health. (*Cushman* v. *U. S. Life Ins. Co.*, 70 N. Y. 72; *Nowak* v. *Brotherhood of American Yeomen*, 249 N. Y. 78; 252 N. Y. 465.)

In the case last cited it was held that in that particular instance and as there shown, the juxtaposition of the questions controlled and limited the meaning of the language used so as to permit the inference that only ailments affecting general health were covered by the question: " Have you ever consulted a physician? " The court was at pains to qualify its holding by stating that it is not to be taken as authority for the proposition that in all cases questions as to consultations with a physician must be taken to relate only to communications between doctor and patient in respect to grave bodily disorders. In the case before us the first question after those calling for her name and date of birth was whether she was in good health. Then followed the question as to specific maladies, including discharge from

the ear. This question plainly indicated that the insurer wished to know the details of any professional treatment for discharge from the ear in order to decide whether it would issue a policy. The insurer did not make this a trivial inquiry, limited to cases where the patient was kept from work by the malady. It was made material to the risk. The insurer so determined and it was not for the insured to pass it over as trifling. "Although no disease may have developed, symptoms which had required medical attention might indicate conditions from which disease might be generated." (*Travelers Ins. Co.* v. *Pomerantz,* 246 N. Y. 63; *Minsker* v. *John Hancock Mutual Life Ins. Co.,* 254 N. Y. 333.) The untruthful answer defeats recovery on the policy. A truthful answer might have been followed with a medical examination or further inquiry.

We are also of the opinion that the answer to the further question as to other medical advice and the " full particulars thereof " constituted a material false representation. It is a strict but humane ruling that when the insurer asks the applicant to say merely whether he has consulted a physician for any disease or disorder not enumerated in the list, the insured, if in good health at the time, need not recall his visits for medical advice for such minor ills as constipation or common cold in the head, which are readily relieved by simple remedies and do not impair his general health. Here the undisputed evidence is that Dr. Matez had attended the insured on three separate occasions within the year prior to the making of the application. The case is not one where the insured, in good health at the time of applying for insurance, fails to give the details of a call on the doctor now forgotten and immaterial to the risk. The insurer was entitled to know, if it made proper inquiry, the medical history of a case where insured had been consulting physicians within the year and died soon after the policy was issued. Whether or not a recent

attack of grippe or influenza is, standing alone, important enough to be mentioned, discharge from the ear is on the list of enumerated disorders which must be reported. If a medical examination had been required the company might have learned the facts. As no medical examination was required the company acted on the truthfulness of the material representations of the insured. The doctrine of the *American Yeomen Case* (*supra*) should not be extended beyond its reasonable implications.

The judgment of the Appellate Division should be reversed and that of the Trial Term affirmed, with costs in this court and in the Appellate Division.

CARDOZO, Ch. J., CRANE, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Judgment reversed, etc.