THEODORE MISCHLER, Plaintiff, *v.* NEW YORK LIFE INSURANCE COMPANY, Defendant.

Supreme Court, Queens County, April 25, 1933.

*Julius F. Newman*, for the plaintiff.

*Louis H. Cooke* [*Kenneth Carpenter* of counsel], for the defendant.

STEINBRINK, J.   On September 18, 1928, Grace Mischler, then twenty-six years of age, insured her life in the defendant company, naming her husband, the plaintiff, as beneficiary.   She was married to the plaintiff in the fall of 1926, and in the spring of 1927 met with an automobile accident in which she sustained a chest injury. From this accident her husband, the claimant under the policy, testified that his wife was weak and run down and very nervous. About a year later, in May, 1928, she was ill and was treated by a physician who found her suffering from a condition of anemia and what he believed to be bronchitis; she was coughing at the time. Finding nothing in her lung, he nevertheless sent her to an X-ray specialist.   Her own physician found what he described as a thick-

ening of her left chest wall, and for her then condition he gave her intravenous injections of iron arsenic and strychnine. A hemoglobin test showed deficient blood cells and her condition suggested debility, for she was pale, somewhat emaciated, and weakened. He saw her six or eight times, the last visit being about four months before the policy in suit was issued. It further appears that until the insured was fourteen years of age she suffered from what her father described as rheumatism. The insured died on October 4, 1929, from what the attending physician in the proof of claim certified was " hemorrhage of lungs; bronchial asthma." The duration of this disease he says was " unknown." He had known the deceased for twenty-six years and had treated her for rheumatism twelve years before. To question, " 11a. From what other important disease, if any, did deceased suffer before," he answered " endocarditis mitral regurgitation," and the duration of each of these he says was " unknown." For her last illness the doctor was consulted beginning September 1, 1929. In the applicant's answer to the medical examination at the time of applying for insurance (which application was dated September 15, 1928) she made the following answers among others:

" 7a. Have you had any accident or injury or undergone any surgical operation? "   " No."

" 8. Have you consulted a physician for or suffered from any ailment or disease of: (b) the heart, blood vessels or lungs? "   " No."

" Have you had rheumatism, gout or syphilis? "   " No."

" 10. Have you consulted a physician for any ailment or disease not included in your above answers? "   " No."

" What physician or physicians, if any, not named above have you consulted or been examined or treated by within the past 5 years? "   " None."

The application was attached to and made part of the contract of insurance.

In the light of the facts disclosed at the trial, which are not disputed, the falsity of the applicant's answers cannot possibly be doubted. Nor can the materiality of these misrepresentations be questioned. In *Travelers Ins. Co.* v. *Pomerantz* (246 N. Y. 63), the defendant, applying for a policy of life and disability insurance, answered question 12 in the application as follows: " I am not deformed; I have no bodily or mental disease, nor have I received medical or surgical attention within the past five years except as herein stated." The proof disclosed that within the past five years he had received medical attention no less than twelve times

from five physicians and that digitalis had been prescribed. In holding that the insurer had presented a *prima facie* case to the effect that the misrepresentations were material the court stated: " The attention to which reference is made in statement 12 must be not for a trivial indisposition but for some substantial illness, sickness, injury or disease. The insurer has the right to an opportunity to know whether the attention was for an ailment inconsiderable or serious. Although no disease may have developed, symptoms which had required medical attention might indicate conditions from which disease might be generated. Depending upon the nature of the attention, whether trivial or substantial, an applicant might prove to be a poor risk or a sound one. The insurer indicated by statement 12 that it wanted to know the facts and that it intended and expected the applicant to speak the truth so that it might acquire information concerning them. Any misrepresentation which defeats or seriously interferes with the exercise of such a right cannot truly be said to be an immaterial one. How can an insurer discover the nature of an applicant's previous illness, subject perhaps to recurrence and apt to degenerate into a disease yet bearing no trace at the time of his physical examination for the policy, if he falsely states that he had received no medical attention at all? " (246 N. Y. 68, 69.) In the case at bar the insured, who had consulted a physician within four months and whose general physical condition, if known to the insurer, would unquestionably have invited further inquiry, was under a plain duty to render complete and correct answers to the questions put to her. These questions, in view of the actual facts disclosed at the trial, were material to the risk and the insurer was entitled to know the entire medical history of the case. (*Jenkins* v. *John Hancock Mutual Life Ins. Co.,* 257 N. Y. 289; *Minsker* v. *John Hancock Mutual Life Ins. Co.,* 254 id. 333; *Travelers Ins. Co.* v. *Pomerantz, supra.*) It, therefore, follows as a necessary conclusion that the untruthful answers made by the insured prevent recovery on the policy. The defendant's answer tendered rescission of the contract of insurance and repayment of the premiums theretofore collected.

Defendant's motion for direction of the verdict is granted. The judgment should provide for repayment of the premiums collected to the plaintiff.