Lee Johnson, Respondent, v. Mutual Benefit Health and Accident Association of Omaha, Nebraska, Appellant.

Third Department, December 19, 1957.

*Harold E. Simpson* for appellant.

*Bruce G. Dean* for respondent.

FOSTER, P. J. Defendant appeals from a judgment of the Supreme Court reforming a health and accident policy of insurance, and directing payment of certain benefits thereunder.

The judgment is based, among other things, upon a finding that an oral contract for health and accident insurance along the lines of the policy as reformed existed between the parties on April 4, 1951. On that date respondent was visited at his home by an agent of the appellant insurance company. Respondent testified he told the agent he wanted a policy of disability insurance, the same as one of his friends had, that would pay him $100 a month for the rest of his life if he became disabled, and the agent told him he could have such a policy upon payment of an initial premium of $28.40. He also testified he told the agent he had only one eye, having lost his right eye after a shooting affray; and the agent said that fact would have no bearing on the policy.

Respondent paid the initial premium of $28.40 to the agent, and the latter said he would have to fill out a paper as a matter of formality. This paper afterwards proved to be an application for a policy, which the agent filled out and the respondent

signed without reading. On the trial the agent denied the essential parts of the respondent's story, but the jury, which the trial court took for advisory purposes, found for the respondent and the trial court adopted their findings. The evidence was sharply conflicting, and for the purposes of this opinion we are assuming facts most favorable to the respondent.

On the application blank the following questions were answered in the negative. '' Have you any impairment of sight or hearing? '' '' Have you ever been operated on by a physician or surgeon? '' The following questions were answered in the affirmative. '' Do you understand and agree that no insurance will be effected until a policy is issued? '' '' Do you hereby apply to the Mutual Benefit Health & Accident Association for a policy to be issued solely and entirely on reliance upon the written answers to the foregoing questions, and do you agree that the Association is not bound by any statement made by or to any agent unless written herein * * * ? '' However innocently made so far as the respondent was concerned the answers to the first two questions were false. Respondent's sight was impaired by the loss of an eye, and a surgeon had operated on him to remove the eye. The affirmative answers to the last two questions cited are important, as will be shown later, because of the fact that the application was annexed to the policy.

About a week later a policy of health and accident insurance, dated April 4, 1951, with a renewal date of August 1, 1951, was delivered to respondent. The application, as signed by respondent, was attached to the policy as a part thereof in conformity with the requirement of section 142 of the Insurance Law (formerly § 58). The policy as written, in a specific loss clause and as an exception to the total disability rate of $100 a month, provided for the payment of $625 in case of the loss of an eye. Respondent put the policy away and did not read it.

On July 24, 1954 respondent lost his good eye in an automobile accident. After a claim of total disability was filed appellant attempted to return the premiums paid and rescind the policy on the ground respondent had made false representations in his application for the policy. An action for reformation by respondent followed and appellant counterclaimed therein for rescission. After a trial with an advisory jury the trial court adjudged that an oral contract of insurance existed on the terms contended for by respondent, that is without any limitation for total disability, which was ratified and confirmed by appellant when it accepted and retained a premium after a claim of loss was filed. Judgment reforming the policy was granted accordingly.

On the facts found most favorable to respondent it is our opinion that the judgment for reformation cannot be sustained as a matter of law. It is true that under certain circumstances a valid oral contract of insurance may be made but those circumstances are not present in this case. Here, the respondent accepted the policy with the application he had signed attached thereto, and both papers together constituted the entire contract between the parties, not only by the terms of the policy but also as a matter of statutory law (Insurance Law, § 142). Respondent was then put on notice that the agent had no power to make an oral contract, and he was put on notice that he had signed an application which contained false answers (*Bollard* v. *New York Life Ins. Co.*, 98 Misc. 286, affd. 182 App. Div. 915, affd. 228 N. Y. 521). That respondent did not read the policy is of no avail to him on the issue of an oral contract. It was his duty to read the policy or have it read to him, and in any event he was charged with notice of its contents (*Minsker* v. *John Hancock Mut. Life Ins. Co.*, 254 N. Y. 333, 338). If he was dissatisfied with the terms of the policy he should have spoken then. When an application for a policy of life, health or accident insurance is attached to the policy itself, controversy is foreclosed as to oral statements made by and between the insured and the agent of the insurer (*Bible* v. *John Hancock Mut. Life Ins. Co.*, 256 N. Y. 458). Cases cited by respondent, which applied a different rule, were decided prior to the enactment of section 58 of the Insurance Law (now § 142), or cases in which the application for the policy was not annexed and made a part thereof.

An integral part of respondent's position is the assertion that appellant is estopped from denying liability for total disability benefits under the alleged oral contract of insurance because of the issuance of certain benefit checks on September 9, 1954, and the receipt and retention of a premium for the quarterly period commencing November 1, 1954. Both of these incidents happened after respondent's claim for total disability had been filed, and there is evidence that on September 9, 1954, appellant insurance company, in the person of its claim manager, had notice that when the policy was issued to respondent he had only one eye. Also the proof is undisputed that on October 13, 1954, a representative of the company told respondent he had made false representations on his application for the policy and tendered a refund of the premiums paid. The demand some weeks later for the payment of a premium, and the acceptance and retention of the same by the company, must be considered as evidence of a waiver of the right to rescind in the absence of a more convincing explanation on the part of the company than is

shown by this record. The only argument on the part of the appellant to explain the demand and acceptance of the premium is to the effect that the company is a large one and the incident was an interdepartmental mistake. But this is not the case of an inadvertent and temporary acceptance of a premium after a decision to rescind had been made (*Travelers Ins. Co.* v. *Pomerantz,* 246 N. Y. 63). Here the appellant actually billed respondent for the premium, after full knowledge of the fact that the latter had only one eye when he applied for a policy, and retained the premium after it was paid. It would be difficult to envisage more cogent evidence of an intent to abandon rescissiôn.

However, a waiver of the right to rescind can only apply to the contract of insurance as written. It cannot be held to apply to an oral contract as claimed by respondent which never existed as a matter of law. Under the contract as written, appellant's liability for the loss of an eye was limited to $625.

The judgment should be reversed on the law and the facts insofar as reformation is concerned and otherwise modified to provide that respondent is entitled to recover the sum of $625 under the policy with interest and costs, and as thus modified should be affirmed.

HALPERN, J. (dissenting in part). I concur in all of Presiding Justice FOSTER's opinion except the last four paragraphs, finding that the appellant's right to rescind the policy had been waived by its receipt and retention of a premium after it had served notice of its election to rescind the policy.

It appears that on October 13, 1954, the claim manager of the appellant's Syracuse office called at the respondent's home and notified him that the company had "cancelled" the policy because of the false representations made by the respondent. The appellant's claim manager left with the respondent a check in the amount of $160.28, representing a refund of all premiums paid, less previous disability payments. The respondent thereupon consulted his attorney and the attorney returned the check to the appellant the same day, enclosed in a letter advising the appellant that a refund of the premiums would not be accepted and that the respondent intended to make "full and complete claim against your company under the terms of the policy". The respective positions of the parties were thus made plain and the lines were drawn for the battle which was expected to ensue in the courts.

It appears that it is the practice of the appellant company to mail premium notices from its principal office in Omaha, Nebraska, where it services several million outstanding policies,

The premium notice consists of a standard printed form addressed to the insured by means of an addressograph plate or a similar reproducing device. A notice in this form was sent by the Omaha office to the respondent on or about October 15, 1954, in accordance with its regular practice, advising that a quarterly premium in the amount of $18.40 would be due on November 1, 1954. A routine reminder notice was subsequently sent by the Syracuse office. The respondent testified that he consulted his attorney after the receipt of the November premium notice and that he paid the premium by money order, with his attorney's approval, on November 26, 1954. The money order was received at the Syracuse office of the appellant and was deposited in its bank account. Subsequently, sometime in the month of December, the appellant's claim manager called upon the respondent's attorney and discussed the rescission of the policy by the company and notified the respondent's attorney that the appellant still insisted upon the rescission of the policy. The respondent's attorney maintained his position that the policy ''was valid in all respects '' and refused, on behalf of his client, to consent to the rescission. The present action was instituted on February 28, 1955, and the defendant-appellant interposed an answer setting up a counterclaim for rescission.

It is clear beyond question upon this record that, despite the mailing of the November premium notice and the acceptance of the money order, the appellant did not, in fact, intend to abandon its rescission or to change its position in any other way. The mailing of the notice and the acceptance of the premium were apparently the result of excessive automation in the appellant's offices. The Omaha office apparently mailed out the premium notice before the claims department had had an opportunity to notify it of the rescission of the policy. The mailing of the reminder notice by the Syracuse office and the acceptance of the premium by that office were obviously the result of mistake or inadvertence. The claims department had apparently failed to notify the premium collection department of the controversy with respect to the policy, or the latter department had failed to mark the account appropriately so that it would not accept any further payment of premiums.

In these circumstances, it seems to me that to hold that the appellant had waived its rescission of the policy by its acceptance of the quarterly premium is to apply the doctrine of waiver in an artificial and mechanical manner (*Travelers Ins. Co.* v. *Pomerantz*, 246 N. Y. 63). '' A waiver is an intentional abandonment or relinquishment of a known right * * * It is essentially a matter of intention. Negligence, oversight or

thoughtlessness does not create it" (*Alsens Amer. Portland Cement Works* v. *Degnon Contr. Co.*, 222 N. Y. 34, 37). The doctrine of waiver should not be regarded as a rule in a game of forfeit, in which "every slip was fatal" (*Wood* v. *Duff-Gordon*, 222 N. Y. 88, 91).

Where a premium is inadvertently accepted by an insurance company, after it has served notice of its election to rescind the policy, the company is not chargeable with having waived the rescission, if it repudiates the acceptance of the premium within a reasonable time after the payment comes to the attention of the responsible officers of the company (*Travelers Ins. Co.* v. *Pomerantz, supra*). The repudiation in this case took place within a reasonable time after the inadvertent receipt of the premium.

The type of waiver claimed by the respondent in this case is really an aspect of the doctrine of election of remedies. It is claimed in effect that, by acceptance of the premium, the company manifested an election to keep the contract alive, which was inconsistent with its rescission of it. But a manifestation of an election of remedies is not necessarily final. If the election had been made inadvertently, it could be recalled provided that the other party had not taken any action in reliance thereon to his prejudice. The question thus becomes one of estoppel; "some element of estoppel [is] the decisive factor" (3 Williston on Contracts [rev. ed.], § 686, p. 1979). "Indeed it is probable that some element either of ratification or of estoppel is at the root of most cases, if not all, in which an election of remedies, once made, is viewed as a finality" (*Schenck* v. *State Line Tel. Co.*, 238 N. Y. 308, 312, per CARDOZO, J.). Here there obviously was no basis for an estoppel. In the circumstances, in view of the known controversy and the impending litigation, the respondent could not have been misled by the acceptance of the premium into thinking that the appellant had changed its mind about canceling the policy. But even if he had been so misled, any such erroneous impression was speedily dissipated by the explicit notice given to the respondent through his attorney in December that the appellant still insisted upon the rescission of the policy. The respondent had not taken any action to his prejudice in the meantime so there is no reason to hold that the appellant was estopped from correcting its inadvertent error in accepting the November premium.

So far as the retention of the premium is concerned, it is apparent that a tender of its return would have been useless. A tender of the premiums previously paid had been rejected by the respondent's attorney and the November premium had been

paid by the respondent with the approval of his attorney. The respondent, acting upon the same advice, would undoubtedly have rejected any tender of repayment of the November premium, in order to maintain a consistent position. A tender was therefore not required (*Strasbourger* v. *Leerburger,* 233 N. Y. 55, 60). Repayment of the premium can be adequately provided for by the court, in giving judgment on the appellant's counterclaim for rescission, as "a condition of its judgment" (Civ. Prac. Act, § 112-g; see, also, *Harris* v. *Equitable Life Assur. Soc.,* 3 Hun 724, affd. 64 N. Y. 196; 1946 Report of N. Y. Law Rev. Comm., p. 31 *et seq.*).

I would therefore reverse the judgment for the respondent and grant judgment in favor of the appellant, rescinding the insurance policy upon the repayment to the respondent of the premiums paid.

BERGAN, COON and GIBSON, JJ., concur with FOSTER, P. J.; HALPERN, J., dissents in part, in an opinion.

Judgment reversed, on the law and facts, insofar as reformation is concerned and otherwise modified to provide that respondent is entitled to recover the sum of $625 under the policy with interest and costs, and as thus modified, is affirmed. Settle order.