Taft, J.
In onr opinion, it is not necessary for us to determine whether the trial court erred in regarding the document signed by plaintiff as an express consent by the plaintiff to the testimony of the three doctors consulted by her husband, because we are of the opinion that the evidence in the record, apart from the portion of testimony of those physicians which would have been inadmissible without such “express consent” of plaintiff because of the physician-patient privilege provided for in Section 2317.02, Revised Code, is such as to require judgment for defendant as a matter of law.
Section 3911.06, Revised Code, reads:
“No ansioer to any interrogatory made by an applicant for a policy shall bar the right to recover upon any policy issued thereon, or be used in evidence at any trial to recover upon such policy, unless it is clearly proved [1] that such answer is willfully false, [2] that it was fraudulently made, [3] that it is material, and [4] that it induced the company to issue the policy, [5] that bwt for such answer the policy would not have been issued, and [6] that the agent or company had no knowledge of the falsity or fraud of such answer.” (Emphasis, brackets and numbers therein supplied.)
As indicated by the numbers and brackets inserted in the above quotation of Section 3911.06, Revised Code, the answer of plaintiff’s husband to question 5 (f) of the application would bar plaintiff’s recovery only if the defendant insurer “clearly proved” as to that answer each and all of the six matters specified in that statute. However, some of those six matters obviously overlap or necessarily include others.
Thus, if “but for” a particular “answer” a “policy would not have been issued,” it necessarily follows that such answer was material and induced the insurer to issue the policy. Hence, we believe that an insurer can satisfy the requirements of Section 3911.06, so as to establish an answer to an interrogatory by an applicant as a bar to recovery upon a policy, by clearly proving that
(1) the applicant willfully gave a false answer
(2) such answer was made fraudulently
(3) but for such answer the policy would not have been issued and
*562 (4) neither the insurer nor its agent had any knowledge of the falsity of such answer.
There is nothing in plaintiff’s reply to even suggest a denial of the affirmative allegations of defendant’s answer that neither the defendant insurer nor its agent had any knowledge of the falsity or fraud of any answer of the insured in his application.
The undisputed evidence in the record clearly and affirmatively establishes without dispute that, but for the insured’s answer in the application that he had not consulted a physician within five years except for a cold on the one occasion which he mentioned, the policy would not have been issued.
As we view it therefore, the basic question to be determined is whether reasonable minds on this record can conclude only that the insured’s answer to question 5 (f) was “willfully false” and “fraudulently made.” If they can only so conclude, the judgment must be affirmed. Otherwise, the cause must be remanded for a new trial.
Section 2317.02, Revised Code, does not prevent testimony by a physician as to the fact that he was consulted in a professional capacity by a person on a certain date. 8 Wigmore on Evidence (3 Ed.), 824, Section 2384; DeWitt on Privileged Communications between Physician and Patient, 146, 148, Section 47.
We recognize that one applying for a life insurance policy may, in answering questions, honestly forget about visits to a physician, especially after a substantial lapse of time. However, in the instant case, the insured’s answer on September 20 was only 12 days after he had seen Dr. Millay on September 8. Furthermore, the insured had also seen that doctor on August 19 and August 11 and saw him later on October 7. That the insured had not forgotten about Dr. Millay is clear from his answer to question 2 (a) about his last being sick in November 1951 and treated by Dr. Millay then for a ‘ ‘ cold. ’ ’
Without these regular visits to Dr. Millay about the time of the application and without the misleading answer to question 2 (a), it may be that reasonable minds could have found that the insured’s answer to question 5 (f) was not willfully false and fraudulently made, notwithstanding the three visits to Dr. *563 Millay in January 1952, the four visits to Dr. Krech in February and March 1952, and the five visits to Dr. Klopfer in 1948 and 1949. However, how can reasonable minds infer that the insured forgot about his visits to Dr. Millay only 12, 32 and 40 days before the signing of the application when he mentioned seeing that same doctor for a “cold” ten months before? Also, if he had not forgotten about those visits, how can reasonable minds infer that the insured did not intend to deceive the defendant insurer by giving his false answer to question 5 (f) ? What honest purpose could he have had in giving that answer ?
Thus, in the absence of some evidence tending to indicate that the insured made an honest mistake in answering question 5 (f), we believe that reasonable minds must, upon the undisputed evidence as to these regular visits to Dr. Millay so near the time of the application, coupled with the misleading answer to question 2 (a), conclude that the insured’s answer to question 5 (f) was willfully false and fraudulently made.
The authorities generally indicate that, where it has been established that in an application for a policy of life insurance an insured has given an untrue negative answer to a question whether he had consulted a physician within a specified number of years and such insured or someone else claiming under the policy contends that the insurer has not clearly proved that such answer was willfully false and fraudulently made because the consultation was not for or not known by the insured to be for any serious ailment or condition, the one claiming under the policy has the burden of going forward with evidence tending to prove (if not the burden of proving) that such consultation was not for or not known by the insured to be for any serious ailment or condition. Sambles v. Metropolitan Life Ins. Co. (1952), 158 Ohio St., 233, 108 N. E. (2d), 321; Connolly v. Equitable Life Assurance Society of United States (1934), 62 S. D., 196, 252 N. W., 493 (“having prevented disclosure of the actual facts, [the claimant] cannot claim a presumption that the facts, if disclosed, would have been favorable to [her] * * * contentions”); Travelers Ins. Co. v. Pomerantz (1927), 246 N. Y., 63, 158 N. E., 21; Harnischfeger Sales Corp. v. National Life Ins. Co. (1935), 195 Minn., 31, 261 N. W., 580; General American Life Ins. Co. v. Wojciechowski (1946), 314 Mich., 275, 22 N. W. *564 (2d), 371; 21 Appleman on Insurance Law and Practice, 38, Section 12123.
In the instant case, there is no evidence tending to indicate that the insured made an honest mistake in answering question 5 <f>*
Plaintiff testified that her husband had gone to Dr. Millay for no longer than a month. Efforts to elicit testimony from her as to when that was were thwarted by objections on the ground that the testimony would be privileged because relating to a communication between husband and wife.
Plaintiff testified that her husband had had pneumonia 20 years before and she proffered her testimony that “since that time * * Land prior to * * * September 20,” 1952, her husband “was never at home except for vacations and never at home during the working week for more than a day or two at a time, and those periods were far apart”; and that “as of September 20 * * * 1952 and for some years prior thereto” her husband’s “appearance was that of a well man at all times.”
Her husband may not have been ‘ ‘ at home during the working week for more than * * * two” days “at a time” and even appeared well but still may not have been well at that time. If the fact was that he was well at that time, plaintiff certainly should have been able to offer evidence tending to prove that fact.
As to the time that plaintiff testified her husband “had reported to” his employer “that he wasn’t well, and” the employer “had him examined” and then “granted a leave of absence in which he was asked to take care of himself and try to recover” and from which “he was never' returned to any duties of salesman” but only given “light work in the office” for a “short time” before he died, plaintiff testified “it was after September 20, 1952,” and “before Christmas * * * of 1952.”
Thus, there is no testimony tending to show that plaintiff’s husband’s report to his employer of not being well was made at any appreciable time after he signed the application on September 20, 1952. Certainly, if the fact was that this report was made at any appreciable time after that date, plaintiff should have been able to offer evidence tending to prove that fact.
*565 Our conclusion is that the evidence in this record (wholly apart from the communications to and advice received from physicians that was objected to by the plaintiff as privileged) required the trial court to direct a verdict for defendant.

Judgment affirmed.

Weygandt, C. J., Zimmerman, Matthias, Bell and O’Neill, JJ., concur.
Herbert, J., concurs in paragraphs one, two and four of the syllabus and in the judgment.