[880 NYS2d 619]

SECURITY MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, Respondent, v LUCY RODRIGUEZ et al., Appellants.

First Department, May 26, 2009

2

### APPEARANCES OF COUNSEL

*Kramer Levin Naftalis & Frankel LLP*, New York City (*Stephen M. Sinaiko, David S. Frankel* and *Erin E. Oshiro* of counsel), for appellants.

*Clifford Chance US LLP*, New York City (*Anthony M. Candido* and *Valeria Calafiore* of counsel), for respondent.

### OPINION OF THE COURT

McGUIRE, J.

In October 2003 defendants Lucy Rodriguez and Esmail Mobarak, Rodriguez's son, purchased three life insurance policies with an aggregate benefit of $20 million from agents of plaintiff Security Mutual Life Insurance Company. The policies were issued on Rodriguez's life and Mobarak is the beneficiary under each policy. Each policy contains an incontestability clause that precludes plaintiff from challenging the policy "after it has been in force, during the Insured's lifetime, for two years from the earlier of its Policy Date or Issue Date." The parties agree that the earlier of these dates, the policy date, is October 1, 2003.

In July 2004 the New York County District Attorney's Office commenced a civil forfeiture proceeding against the agents of Security from whom defendants purchased the policies. The District Attorney alleged that the agents had engaged in fraudulent conduct relating to the issuance of life insurance policies by another carrier, Prudential Financial Company. In September 2004 Security notified defendants that the agents were no longer authorized to conduct business on behalf of plaintiff or take any action concerning policies issued by plaintiff. The agents pleaded guilty in May 2005 to insurance fraud crimes with respect to the issuance of life insurance policies by Prudential.

On Monday October 3, 2005, plaintiff commenced this action against defendants seeking rescission of the policies and damages for fraud. Plaintiff alleged that defendants, in conjunction with the agents, fraudulently procured the policies by providing false and misleading financial and medical information about Rodriguez to plaintiff. Defendants moved to dismiss the complaint on the ground that the incontestability clause barred the action because the policies became incontestable after Saturday October 1, 2005 and the action was not commenced until two days later. Alternatively, defendants sought dismissal of the rescission claim on the ground that plaintiff waived its right to rescind the policies because it accepted premium payments after commencing the action, and dismissal of the fraud claims on the

ground that plaintiff failed to plead the alleged fraud with sufficient detail. Plaintiff opposed the motion, arguing that because the date on which the policies became incontestable fell on a Saturday, the action was commenced in a timely fashion on the next business day; it did not waive its rescission claim by accepting premium payments; and its fraud claims were pleaded with sufficient detail. Supreme Court denied defendants' motion, and this appeal ensued.

Defendants argue that the policies became incontestable after October 1, 2005; the statutory provision dealing with certain contractual deadlines falling on weekends and public holidays, General Construction Law § 25, does not apply so as to extend plaintiff's time to contest the policies; and plaintiff's action, commenced on October 3, thus is barred by the incontestability clause. Plaintiff counters that because Insurance Law § 3203 (a) (3) requires the inclusion of the incontestability provision in the policies,[1] General Construction Law § 25-a, which governs statutory deadlines falling on weekends and public holidays, extended its time to contest the policies to Monday October 3. Alternatively, plaintiff argues that even if General Construction Law § 25-a does not apply, section 25 applies in any event.

General Construction Law § 25, entitled "Public holiday, Saturday or Sunday in contractual obligations; extension of time where performance of act authorized or required by contract is due on Saturday, Sunday or public holiday," states, in relevant part, that

"[w]here a contract by its terms authorizes or requires . . . the performance of a condition on a

---

**1.** Insurance Law § 3203 ("Individual life insurance policies; standard provisions as to contractual rights and responsibilities of policyholders and insurers") provides, in relevant part, that

"(a) All life insurance policies, except as otherwise stated herein, delivered or issued for delivery in this state, shall contain in substance the following provisions, or provisions which the superintendent deems to be more favorable to policyholders: . . .

"(3) that the policy shall be incontestable after being in force during the life of the insured for a period of two years from its date of issue, and that, if a policy provides that the death benefit provided by the policy may be increased, or other policy provisions changed, upon the application of the policyholder and the production of evidence of insurability, the policy with respect to each such increase or change shall be incontestable after two years from the effective date of such increase or change, except in each case for nonpayment of premiums or violation of policy conditions relating to service in the armed forces."

Saturday, Sunday or a public holiday, or authorizes or requires . . . the performance of a condition within or before or after a period of time computed from a certain day, and such period of time ends on a Saturday, Sunday or a public holiday, unless the contract expressly or impliedly indicates a different intent, such . . . condition [may be] performed on the next succeeding business day . . . with the same force and effect as if made or performed in accordance with the terms of the contract" (§ 25 [1]).[2]

General Construction Law § 25-a, entitled "Public holidays, Saturday or Sunday in statutes; extension of time where performance of act is due on Saturday, Sunday or public holiday," states that

"[w]hen any period of time, computed from a certain day, within which or after which or before which an act is authorized or required to be done, ends on a Saturday, Sunday or a public holiday, such act may be done on the next succeeding business day . . . , except that where a period of time specified by contract ends on a Saturday, Sunday or a public holiday, the extension of such period is governed by section twenty-five of this chapter" (§ 25-a [1]).

At first blush, the statutes appear to be unproblematic and to govern two distinct situations. General Construction Law § 25-a extends to the next succeeding business day a party's time to perform any act authorized or required to be performed before a particular period of time where that period ends on a Saturday, Sunday or public holiday, unless the period of time is specified in a contract. Thus, section 25-a (1) provides that "where a period of time specified by contract ends on a Saturday, Sunday or a public holiday, the extension of such period is governed by section twenty-five of this chapter." General Construction Law § 25,[3] in turn, extends to the next succeeding business day a party's time to perform a contractual "condition" when the pe-

---

**2.** The statute also applies to extend to the next succeeding business day a party's time to make a payment of money authorized or required by a contract. That provision is not relevant to this appeal.

**3.** The statute does not apply where the contract expressly or impliedly indicates an intent that the condition must be performed by the end of the period of time regardless of whether that period ends on a Saturday, Sunday or public holiday (*see Jessar Realty Corp. v Friedman Realty Co.*, 253 NY 298 [1930]). Neither plaintiff nor defendants assert that this exception to the statute applies.

riod in which performance is due ends on a weekend or public holiday. Thus, section 25-a (1) broadly allows for an extension of "any period of time . . . within which or after which or before which an act is authorized or required to be done" when that period ends on a weekend or a public holiday. By contrast, albeit implicitly, section 25 permits an extension of time *only* where the party seeking the extension was authorized or required to perform a "condition" of a contract and the last day of the period of time to perform that condition ends on a weekend or public holiday.[4]

Here, the relevant period of time is recited in the policies, so General Construction Law § 25 would seem to apply and an extension would be available only if the commencement of an action contesting the policies was a "condition" under the policies. But the incontestability clause in the policies is mandated by a statute, Insurance Law § 3203 (a) (3); if plaintiff had omitted the clause from the policies it would be deemed part of the policies as though written into them (*see Trizzano v Allstate Ins. Co.*, 7 AD3d 783, 785 [2004], *lv denied in part and dismissed in part* 3 NY3d 696 [2004]; 2 Couch on Insurance 3d § 19:1 ["Existing and valid statutory provisions enter into and form a part of all contracts of insurance to which they are applicable, and, together with settled judicial constructions thereof, become a part of the contract as much as if they were actually incorporated therein" (footnotes omitted)]). Thus, if General Construction Law § 25 governs, an anomalous result would follow: an insurer that complies with the law and includes in its life insurance policies the clause it is required by law to include will have a shorter period of time in which to contest the policies than it would have if it omitted the clause from the policies.

 That anomaly is not required by the literal terms of section 25 or section 25-a. That is, neither statute purports to state the governing rule when a period of time within which an act is authorized or required is specified *both* in a statute *and* in a contract. Nor is this anomaly required by the case law. As we have held, "[w]hen a provision of an insurance policy mirrors statutory language . . . the policy clause is subject to the same

---

**4.** Reading the two statutes together, section 25 precludes an extension of time when a period of time specified in a contract ends on a Saturday, Sunday or public holiday but the contract does not authorize or require the performance of a "condition." After all, a contrary reading of section 25 would render it superfluous as it would perform no function not already performed by section 25-a.

interpretation as the statute" (*Matter of Country Wide Ins. Co. [Russo]*, 201 AD2d 368, 370 [1994]). *Country Wide* is consistent with *Metropolitan Life Ins. Co. v Schmidt* (299 NY 428 [1949]), in which the Court determined that the incontestability clause of a policy must be interpreted in the same manner as the language of the statute requiring the clause (*id.* at 432 ["the language of the policy provision which was copied from the statute, is statutory language, and as such, is subject to the General Construction Law, since there is nothing in the general object or context of the Insurance Law provision to indicate that a different meaning or application was intended from that required to be given by section 20 of the General Construction Law"]). Thus, General Construction Law § 25-a applies to the period of time plaintiff had to contest the policies and extended the end of that period to October 3, and plaintiff's action is not barred by the incontestability clause.[5]

With respect to defendants' contention that plaintiff waived the right to rescind the policies, "[w]here an insurer accepts premiums after learning of an event allowing for cancellation of the policy, the insurer has waived the right to cancel or rescind" (*Continental Ins. Co. v Helmsley Enters.*, 211 AD2d 589 [1995]; *see Bible v John Hancock Mut. Life Ins. Co.*, 256 NY 458 [Cardozo, Ch. J., 1931]; *see also Johnson v Mutual Benefit Health & Acc. Assn. of Omaha, Neb.*, 5 AD2d 103, 107 [1957], *mod on*

---

**5.** The parties vigorously dispute whether the commencement of an action contesting the policies is a "condition" within the meaning of General Construction Law § 25. Defendants maintain that the word "condition" should be given its technical meaning under contract law—" 'an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due' " (*Merritt Hill Vineyards v Windy Hgts. Vineyard*, 61 NY2d 106, 112 [1984], quoting Restatement [Second] of Contracts § 224; *see Oppenheimer & Co. v Oppenheim, Appel, Dixon & Co.*, 86 NY2d 685, 690 [1995]). According to defendants, the commencement of an action contesting the policies is not a "condition" under the policies because it is not an event that must occur before performance by plaintiff under the policies becomes due, and the extension afforded by section 25 is not available to plaintiff. Plaintiff asserts that the word "condition" should not be given that technical meaning (*see Harrison v Allstate Ins. Co.*, 1999 WL 638243, 1999 US Dist LEXIS 12862 [SD NY 1999]). Thus, plaintiff contends that the word should be given a broad construction and that, under section 25, "contractual 'conditions' encompass contractual requirements—such as the one at issue here—that determine whether a party must make future performance (i.e., here, whether [plaintiff] must perform on a fraudulently induced policy)." Because General Construction Law § 25-a applies, however, we need not address this dispute.

*other grounds* 5 NY2d 1031 [1959]).[6] The basis of this rule is that an insurer's claimed attempt to both accept premiums and reserve its right to rescind is unenforceable for lack of mutuality and timeliness (*Continental Ins. Co.*, 211 AD2d at 589, citing *McNaught v Equitable Life Assur. Socy.*, 136 App Div 774 [1910]). Here, plaintiff commenced this action in October 2005. Yet, between that month and June 2006, plaintiff collected nine $5,000 premium payments from Mobarak; the payments were debited monthly from Mobarak's checking account. Thus, after commencing this action, plaintiff collected approximately $45,000 in premiums from Mobarak, none of which have been refunded.

Plaintiff argues that it did not waive the right to rescind the policies because it accepted the premium payments *after* it commenced the action. According to plaintiff, the commencement of an action to rescind a policy is an unambiguous sign that the insurer is seeking to cancel, not enforce, a policy. Therefore, the argument goes, plaintiff did not manifest an intention to abandon its right to rescind the policies and its acceptance of premiums could not be construed as an intent to ratify the policies. Plaintiff's argument is contrary to the case law.

In *Continental Ins. Co.* (*supra*), the plaintiff issued to the defendant property owner several liability insurance policies.[7] Approximately six months after the policies were issued, the plaintiff discovered misrepresentations that the defendant made to the plaintiff, which permitted the defendant to obtain the coverage at reduced premiums. The plaintiff discovered the misrepresentations in February 1989 and within days of the discovery demanded that the defendant pay additional premiums; the plaintiff indicated to the defendant that the policies "would not and could not be permitted to stand as written." The parties then negotiated for several months in an effort to resolve the dispute until May 1989 when the plaintiff commenced an action against the defendant to rescind the policies. The defendant continued to make its monthly premium payments to the plaintiff through June 1989.

---

**6.** The use of the term "waiver" in this regard is somewhat imprecise. As Chief Judge Cardozo noted in *Bible*, "the delivery of the policies by the insurer, and the keeping of the premiums with knowledge of a then existing breach of the conditions as to the health of the insured and her treatment in a hospital gave rise to a waiver or, more properly, an estoppel" (256 NY at 462).

**7.** The facts underlying our decision in *Continental* are taken from the briefs of the parties in that action.

Supreme Court granted the defendant's motion for summary judgment dismissing the rescission claim, finding that the plaintiff had waived its rescission claim by accepting the premium payments. The plaintiff appealed, arguing, among other things, that it did not waive the rescission claim by accepting the premiums following its discovery of the alleged fraud and after it commenced the action. We disagreed and affirmed the dismissal of the rescission claim, concluding that "[t]he IAS Court properly determined that plaintiff waived its right to seek rescission of the contract of insurance when it knowingly accepted premium payments for several months following discovery of the alleged misrepresentations upon which it claimed to have relied when it issued the policies" (211 AD2d at 589).

In *Scalia v Equitable Life Assur. Socy. of U.S.* (251 AD2d 315 [1998]), the plaintiff purchased a disability income insurance policy from the defendant. The plaintiff sustained an injury that he claimed rendered him totally disabled and sought benefits under the policy (*Scalia*, defendant-appellant's brief, 1998 WL 35178856, *4-5). After paying the plaintiff benefits for several months, the defendant denied him further benefits on the ground that he was not totally disabled (*id.* at *5). The plaintiff commenced an action in April 1994 seeking further benefits under the policy (*id.*). After its motion to dismiss the action was denied and it served its answer, the defendant moved in July 1995 to amend its answer to include a defense that the plaintiff's claim was barred because he made material misrepresentations in his application for the policy (*id.* at *5-6). The defendant also sought to amend its answer to include a counterclaim for rescission of the policy (*id.* at *6). Although Supreme Court granted the motion to amend, it subsequently dismissed the defense founded on the plaintiff's alleged misrepresentations and the related counterclaim (*id.* at *7). The court did so because the defendant had accepted premium payments from the plaintiff until September 1995, several months after asserting its defense and counterclaim based on the plaintiff's alleged misrepresentations (*id.* at *7-8). Thus, according to Supreme Court, the defendant had waived its right to rescind the policy (*id.*).

The Second Department affirmed. Citing, among other authorities, our decision in *Continental Ins. Co.*, the Court noted that "[i]t is well settled that the continued acceptance of premiums by the carrier after learning of facts which allow for

rescission of the policy, constitutes a waiver of, or more properly an estoppel against, the right to rescind" (251 AD2d at 315). The Court determined that "[t]he record supports the Supreme Court's determination that the defendant . . . waived its right to rescind the disability income insurance policy, by continuing to accept premium payments after it gained sufficient knowledge of the alleged misrepresentations upon which it claims to have relied when issuing the policy" (*id.*; *see also Oglesby v Massachusetts Acc. Co.*, 230 App Div 361 [1930]).

Plaintiff's acceptance of premiums from Mobarak after learning of the alleged fraud allowing for cancellation of the policies constituted a waiver of (or more properly an estoppel against) its right to cancel or rescind the policies (*see Scalia, supra*; *Continental Ins. Co., supra*). We note, too, that plaintiff did not retain temporarily a payment (or a couple of payments) from Mobarak before refunding the payment (*cf. Travelers Ins. Co. v Pomerantz*, 246 NY 63, 70-71 [1927]; *Boyd v Allstate Life Ins. Co. of N.Y.*, 267 AD2d 1038, 1040 [1999]). Rather, as discussed above, plaintiff collected from Mobarak nine $5,000 premium payments over a nine-month period and plaintiff has not refunded any of those payments. The collection and retention of those payments compel the conclusion that plaintiff cannot now seek to rescind the policies (*see Scalia, supra* [insurer waived right to rescind policy where it accepted premium payments for several months after it asserted counterclaim to rescind that policy]; *Continental Ins. Co.*, 211 AD2d at 589 [insurer waived right to rescind policy where it accepted premium payments for "several months" following discovery of alleged misrepresentations]; *Garbin v Mutual Life Ins. Co. of N.Y.*, 77 Misc 2d 689 [App Term, 1st Dept 1974] [insurer waived right to rescind policy where it accepted and retained four separate quarterly premium payments]). Accordingly, Supreme Court erred in denying that aspect of defendants' motion seeking dismissal of the cause of action for rescission.

To the extent that *Prudential Ins. Co. of Am. v BMC Indus., Inc.* (630 F Supp 1298 [SD NY 1986]), relied upon by plaintiff, is inconsistent with *Continental Ins. Co. (supra)* and *Scalia (supra)*, we do not follow it. In *Prudential*, the plaintiffs entered into an agreement with defendant pursuant to which the plaintiffs purchased notes held by the defendant. The defendant was required to make periodic interest payments to the plaintiffs on the unpaid balance of the notes. The plaintiffs commenced an action against the defendant to rescind the agreement, alleg-

ing that the defendant failed to disclose material information and misrepresented material facts during the parties' negotiations. The defendant asserted that the plaintiffs ratified the agreement by accepting several interest payments after they commenced the action. The court granted the plaintiffs' motion to strike the defendant's ratification defense, holding that "the acceptance of money during the pendency of th[e] action is not inconsistent with the Plaintiffs['] claim for rescission [because] it does not undermine the clear demand for rescission embodied by the act of filing the . . . action" (*id.* at 1303). The court, however, was not addressing the situation where an insurer accepted premium payments from the insured after the insurer asserted a claim to rescind the policies. That situation, as discussed above, is controlled by New York case law, including our own precedent (*Continental Ins. Co., supra; see e.g. Scalia, supra*). Additionally, it should be noted that *Prudential* was decided before *Continental Ins. Co.* and *Scalia.*

■ Finally, Supreme Court properly determined that the complaint sufficiently alleged fraud with the requisite particularity (*see* CPLR 3016 [b]; *Bernstein v Kelso & Co.*, 231 AD2d 314, 320 [1997]). Notably, the complaint specified not only the misstatement of Rodriguez's net worth, but also the falsity of the medical statements and the proffering of fictitious accountant and medical records.

Accordingly, the order of Supreme Court, New York County (Charles E. Ramos, J.), entered December 7, 2007, which denied defendants' motion to dismiss the complaint, should be modified, on the law, to grant that aspect of defendants' motion seeking dismissal of the rescission claim, and otherwise affirmed, without costs.

GONZALEZ, P.J., MOSKOWITZ, DEGRASSE and FREEDMAN, JJ., concur.

Order, Supreme Court, New York County, entered December 7, 2007, modified, on the law, to grant that aspect of defendants' motion seeking dismissal of the rescission claim, and otherwise affirmed, without costs.