(February 14, 2012)

■ THE UNITED STATES LIFE INSURANCE COMPANY IN THE CITY OF NEW YORK, Respondent, v REBEKA BLUMENFELD et al., Appellants. [938 NYS2d 84]—

On April 25, 2006, plaintiff insurer issued a life insurance policy with a $5,000,000 death benefit, requiring quarterly premiums of $70,658.25. Defendant Rebeka Blumenfeld was the insured, and the beneficiary/policy owner was defendant the Blumenfeld Family Irrevocable Life Insurance Trust (the Trust). The policy included a two-year contestability clause, pursuant to Insurance Law § 3203 (a) (3).

Defendant insured, who was retired and in her late 70s, represented in her January 2006 life insurance application to plaintiff that she had a net worth of $35-40 million and household income of $400,000-500,000 and that she was a beneficiary of two multimillion dollar life insurance policies. The application gave her address as an apartment in Williamsburg, Brooklyn. The Trust's address was given as 2 West 47th Street in Manhattan.

By letter dated April 22, 2008, plaintiff notified the Trust of its intent to rescind the policy because of material misrepresentations concerning the insured's financial status at the time of her signing the life insurance application. Plaintiff noted an ongoing fraud investigation. The letter cited a March 2007 investigative report that had revealed the insured owned no real estate and that she rented an apartment in a neighborhood in Brooklyn that had a median household income of $29,625. The letter further noted that plaintiff would refund any applicable premiums and that it would file a declaratory judgment action to rescind the policy unless it received additional information from the insured or a signed copy of the rescission agreement enclosed with the letter.

It is undisputed that after the insurer received the March 2007 investigative report, plaintiff retained and processed premium payments in April and May 2007, in the respective amounts of $43,452.50 and $130,387.50.

An investigative report from February 2008 identified the insured's residence as 2 West 47th Street, the same address the insured gave as the Trust's address in the policy application in January 2006.

Plaintiff commenced this action against the insured and the beneficiary/policy owner, on April 23, 2008, two days before the end of the policy's two year contestability provision. The insurer sought a declaratory judgment rescinding the policy based upon alleged misrepresentations in the insured's application. Plaintiff amended the complaint in September 2009.

Thereafter, by letter dated September 25, 2008, plaintiff notified the Trust that the policy was in its grace period and would terminate without value unless plaintiff received an additional premium in the amount of $81,262.73 prior to November 25, 2008. The Trust timely paid this premium.

In June 2010, defendants moved for summary judgment dismissing the amended complaint, arguing that plaintiff had ratified the policy and waived its right to rescind by failing to promptly seek rescission upon learning, as early as March 2007, of the insured's alleged misrepresentations (*see Securities & Exch. Commn. v Credit Bancorp, Ltd.*, 147 F Supp 2d 238, 256-257 [SD NY 2001]). Defendants further argued that plaintiff was estopped from rescinding the policy because it had retained premiums after learning of the insured's alleged misrepresentations (*see Continental Ins. Co. v Helmsley Enters.*, 211 AD2d 589 [1995]).

In opposition to defendants' motion, plaintiff argued that it did not waive its right to rescind because its retention of premiums was inadvertent. Plaintiff claimed that its computer system was not designed to reject premiums. Moreover, rejecting premiums could be potentially detrimental to the policy holder in the event the court rejected the insurer's request for a declaration of rescission. Plaintiff further argued that it could not have waived its right to rescind because it lacked the requisite intent, citing its April 22, 2008 letter to the Trust that plaintiff did not intend to waive its rights or remedies.

The trial court, while expressing doubt as to the merit of plaintiff's arguments, denied defendants' motion, pending further discovery, noting plaintiff's argument that summary judgment was premature as discovery was incomplete.

An insurer's failure to rescind a policy promptly after obtaining sufficient knowledge of alleged misrepresentations by an insured constitutes ratification of the policy (*see Securities & Exch .Commn.*, 147 F Supp 2d at 256). The court in *Securities & Exch. Commn.* rejected the insurers' argument that it was

not fully aware of the insured's alleged fraud, noting that " 'knowledge which is sufficient to lead a prudent person to inquire about the matter, when it could have been ascertained conveniently, constitutes notice of whatever the inquiry could have disclosed, and will be regarded as knowledge of the facts' " (*id.*, quoting *Union Ins. Exch., Inc. v Gaul*, 393 F2d 151, 155 [7th Cir 1968]). The insurers in *Securities & Exch. Commn.* were on notice of the insured's alleged misrepresentations for more than one year but chose not to rescind the policies at issue promptly.

Moreover, an insurer that accepts premiums after learning of facts that it believes entitles it to rescind the policy has waived the right to rescind (*see Security Mut. Life Ins. Co. of N.Y. v Rodriguez*, 65 AD3d 1, 7-11 [2009]; *American Gen. Life Ins. Co. v Salamon*, 2011 WL 976411, *3, 2011 US Dist LEXIS 27118, *9-10 [ED NY 2011, Matsumoto, J.]). An insurer's attempt to reserve its rights while accepting premiums is unenforceable for lack of mutuality (*see Continental Ins. Co. v Helmsley Enters.*, 211 AD2d 589 [1995]). This rule applies even where the insurer claims it accepted premiums after commencing a rescission action to "protect" the insured pending a determination of the action, as is the case here (*see United States Life Ins. Co. in the City of N.Y. v Grunhut*, 83 AD3d 528, 529 [2011], citing *Security Mut. Life Ins. Co. of N.Y.*, 65 AD3d at 7-11).

In *Grunhut*, we specifically rejected the insurer's argument that it was protecting the rights of all parties when it continued to accept premiums for months after commencing the rescission action (83 AD3d at 529). Similarly, in *Rodriguez*, we found that by accepting premiums for several months following the commencement of its rescission action, the insurer waived its right to rescind the policy (65 AD3d at 8). In *Salamon*, virtually on point with the case before us, the court found the insurer's argument that it lacked intent to rescind the policy unpersuasive, finding that "[i]ntent is established if the insurer had 'sufficient information' regarding grounds for rescission but chose not to exercise its right to rescind" (2011 WL 976411, *3, 2011 US Dist LEXIS 27118, *9). The *Salamon* court further found compelling the grave inconsistencies in the insurer's conduct, similar to those here, where the insurer had sent a rescission letter that specifically stated that it did not intend to waive any rights and where the insurer sent grace and lapse notices to the insured while maintaining the policy in active status (2011 WL 976411, *6, 2011 US Dist LEXIS 27118, *13-14).

Here, plaintiff learned, more than one year prior to commencing this action, that the insured owned no real estate and resided in a neighborhood that had an average median income of $29,625, despite the insured's representations in her life in-

surance application that she had a net worth of $35-40 million and a household income of $400,000-500,000. Thus, we find that, as early as March 2007, plaintiff had sufficient knowledge of potential material misrepresentations warranting rescission of the policy. However, plaintiff continued to accept premiums and both sought and accepted a further premium payment following the commencement of this action. Therefore, the insurer's conduct constituted a ratification of the policy and a waiver of its right to rescind (*see Securities & Exch. Commn.*, 147 F Supp 2d at 256-257). Concur—Gonzalez, P.J., Moskowitz, Acosta and Richter, JJ.